**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 2 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

JAMES H. HANNAH,

   Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,[*]

   Defendant-Appellee.

No. 97-6101
(D.C. No. 95-CV-1785)
(W.D. Okla.)

---

ORDER AND JUDGMENT[**]

---

Before BALDOCK, BARRETT, and MURPHY, Circuit Judges.

---

   After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

---

[*]   Pursuant to Fed. R. App. P. 43(c), Kenneth S. Apfel, the newly-appointed Commissioner of Social Security, is substituted for John J. Callahan, Acting Commissioner of Social Security, as the defendant in this action.

[**]   This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Claimant James H. Hannah appeals from a district court order affirming the Commissioner's denial of his application for social security disability insurance benefits. Claimant contends on appeal that the administrative law judge (ALJ) (1) failed to handle properly claimant's subjective complaints, (2) substituted his own opinion for the medical evidence and based his findings on unreasonable assumptions, and (3) violated his duty to develop the record with regard to claimant's alleged mental impairment. Because we find the decision of the ALJ supported by substantial evidence, and the law correctly applied, we affirm.

Claimant is a forty-five-year-old man who has a history of obesity. He filed this application for benefits in 1993, alleging disability since February 1984 due to obesity, high blood pressure, shortness of breath, swollen legs, anemia, sleep apnea (causing daytime somnolence and narcolepsy), and depression. Claimant's insured status expired on September 30, 1989, and thus in order to receive benefits, he must show that he was totally disabled prior to that date. See Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993).

At the administrative hearing, claimant, who was represented by counsel (although not counsel on appeal), testified that he stopped working in February of 1984 because his blood pressure had "gotten out of control," he was falling asleep at work, he "would get out of breath," and "it just got to the point where

[he] couldn't do anything." II Appellant's App. at 47-48, 52-53. These problems, according to claimant's testimony, were not new. Claimant testified that he has had high blood pressure all his life, but that it has gotten worse as his weight has increased[1] and he has gotten older. See id. at 57. Claimant also testified that he started having trouble falling asleep on the job and with swelling in his legs back in 1977 or 1978. See id. at 54, 56. He testified that he first saw a doctor about shortness of breath in 1977. See id. at 70-71.

At the time of the administrative hearing, the record contained virtually no medical evidence for the period prior to the expiration of claimant's insured status. Claimant testified that he saw his family doctor, Dr. Shabbir Chaudry, in the 1970's concerning obesity, see id. at 68, shortness of breath, see id. at 70, depression, see id. at 73-74, and high blood pressure, see id. at 77, and in 1983 concerning anemia, see id. In response to a request for medical records, Dr. Chaudry indicated that no records could be located. See id. at 211. Claimant additionally testified that he did not seek further medical attention for these problems, or any medical attention at all for his sleep apnea, until at least

---

[1]    Although the record does not include year by year information about claimant's weight, we do know that claimant first sought medical attention for his obesity in 1970, see II Appellant's App. at 68;  that he considers his "usual weight" to be "about 360" pounds, although he last weighed that in 1983, see id. at 43;  and that, at the time of the hearing in June of 1994, he weighed around 448 pounds and had for the last six to seven years, ranging from a low of about 401 to a high of 461, see id. at 43-44.

1990, see id. at 68-77, six years after his alleged onset date and following the expiration of his insured status.[2]

Following the hearing, and indeed following the ALJ's issuance of an unfavorable decision, claimant's counsel sought to reopen the record, proffering new medical evidence that show claimant was treated in 1983 and 1984 primarily by Dr. Robert Beckerley for anemia and depression. The ALJ granted the motion to reopen, considered the new evidence, and based on the new evidence, issued a revised, albeit still unfavorable decision. In the revised decision, benefits were denied at step four of the sequential evaluation process applicable to disability claims. See Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five-step process). The ALJ concluded that, as of the date last insured, although claimant was obese, he retained the residual functional capacity (RFC) to perform medium work and thus could perform his past work so classified. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.

---

[2]    There was and is considerable medical evidence in the record from the post-insured period. From March of 1990 through the time of the administrative hearing, claimant saw a number of doctors at Oklahoma Memorial Hospital and Clinics for a variety of complaints, including shortness of breath, obesity, fatigue, daytime somnolence, narcolepsy, edema, high blood pressure, and anemia. In June of 1991, claimant was diagnosed with severe obstructive sleep apnea syndrome. See II Appellant's App. at 261. There are opinions of disability by his treating physician, Kristina Davis, in April and August of 1993 and May of 1994. See id. at 210, 228, 260.

We review the Commissioner's decision "to determine whether it is supported by substantial evidence and whether the correct legal standards were applied." Kepler v. Chater, 68 F.3d 387, 388 (10th Cir. 1995). At step four of the sequential evaluation process, the relevant analysis is whether claimant is able to return to his past relevant work. Henrie, 13 F.3d at 360. The burden is on claimant at this stage to show that his impairment makes him unable to perform that work. Id.

Claimant's first contention is that the ALJ failed to give adequate consideration to his subjective complaints of shortness of breath, fatigue, pain, and narcolepsy. We disagree. It is clear from the ALJ's decision that he considered claimant's complaints, and indeed found claimant's testimony credible "to the extent it reflected his medically determinable impairments in the 1980's." II Appellant's App. at 19. The ALJ further found, however, that "[t]hese impairments did not reach the level of severity to be considered disabling prior to termination of [claimant's] insured status on September 30, 1989." Id. Both these findings are supported by substantial evidence. There is nothing in the record, neither testimony nor medical records, to indicate that claimant sought any medical attention whatsoever for his allegedly disabling problems from mid-1984 until 1990. Furthermore, although the new medical evidence from 1983 and 1984 shows that claimant was complaining then of obesity, shortness of breath, fatigue,

depression, and difficulty sleeping, there is no indication that these complaints, some of them fairly longstanding, had become disabling.[3] There is no medical opinion of disability until 1993. Indeed, in 1983, although claimant was apparently off work for some period of time, Dr. Beckerley noted on July 11 that claimant was "to go back to work part-time," id. at 287, and two weeks later, wrote that he "[did] not feel that [claimant] [could] be maintained on disability any longer." Id. at 286.

In challenging the ALJ's credibility determination, claimant also argues that the ALJ ran afoul of Kepler, 68 F.3d at 391, because he failed to articulate the basis for his determination. We disagree. It is clear from the ALJ's opinion that he discounted the significance of claimant's subjective complaints of disabling conditions during the insured period because of the lack of objective corroborative evidence from that period, which is appropriate. See Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990).

_____

[3] In his July 5, 1994 report, ten years after he treated claimant and three years after claimant was diagnosed with severe obstructive sleep apnea syndrome, Dr. Beckerley wrote that in January of 1984 claimant "continued to have fatigue and problems with sleeping which with his weight certainly may have represented problems with sleep apnea at night." II Appellant's App. at 281. At the most, this constitutes a retrospective diagnosis, which is insufficient without evidence of actual disability. See Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1348-49 (10th Cir. 1990). The medical records and report indicating that claimant's ability to work in 1983 and 1984 was hampered at least temporarily by his weight and anemia, see II Appellant's App. at 281, 287, 292, 295, are not evidence of actual disability.

Claimant next contends that substantial evidence does not support the ALJ's conclusion that during the insured period, he retained the residual functional capacity to perform medium work. He argues that "[i]t was simply unreasonable for the ALJ to assume that a person of Mr. Hannah's massive weight would be . . . able to perform the prolonged standing and walking and frequent bending which is critical to the performance of medium work." Appellant's Br. at 19 (footnote omitted). The record reflects no such assumption on the part of the ALJ. On the contrary, the record shows that notwithstanding claimant's history of obesity and related problems, claimant worked from at least 1974 to February 1984 at jobs variously classified from light to heavy, with his stated performance in some instances in the very heavy range. There is no medical evidence in the record to indicate that claimant's problems became disabling in February 1984, when he stopped working, or at any time before the expiration of his insured status in September 1989. There is no medical opinion of disability until 1993, and there is no evidence that claimant sought any medical attention whatsoever for his allegedly disabling problems from mid-1984 until 1990. Based on the record, we agree with the Commissioner that claimant failed to sustain his burden to show that he could not return to his past work within the insured period.

Finally claimant argues that the ALJ failed in his duty to develop the record with regard to claimant's mental impairment. In particular, he complains that, notwithstanding Dr. Beckerley's July 5, 1994 report indicating that claimant had been referred back in 1983 to Dr. Hand and then "apparently" to Dr. Troutman (a psychiatrist) for further assessment of his depression, see II Appellant's App. at 280, the ALJ made no effort to obtain "these records," see Appellant's Br. at 21. We would remind appellate counsel that Dr. Beckerley's 1994 report, together with clinical records from 1983 and 1984 which include the treatment notes of Dr. Hand, were submitted by hearing counsel after the hearing, and indeed following the issuance of the ALJ's first unfavorable opinion. In his treatment notes, Dr. Hand wrote, "Mr. Hannah refused referral and also refused to schedule another appt. to discuss psychological intervention in more detail." II Appellant's App. at 284. We conclude that, under these circumstances and absent any contrary explanation by counsel, the ALJ was entitled to assume that had there been additional relevant medical records concerning treatment by either Dr. Hand or Dr. Troutman, they too would have been submitted. Cf. Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997) ("[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored.")

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.

Entered for the Court


Bobby R. Baldock
Circuit Judge