**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 4 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CARL C. SMITH,

      Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,*

      Defendant-Appellee.

No. 97-5099
(D.C. No. 96-CV-262)
(N.D. Okla.)

---

**ORDER AND JUDGMENT***

---

Before **PORFILIO**, **KELLY**, and **HENRY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

---

\*     Pursuant to Fed. R. App. P. 43(c), Kenneth S. Apfel is substituted for
John J. Callahan, former Acting Commissioner of Social Security, as the
defendant in this action.

\*\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

# I

Claimant Carl C. Smith appeals from the district court's judgment affirming the Commissioner's decision denying his claim for disability insurance and supplemental security income benefits at step five of the five-part process for determining disability, see 20 C.F.R. §§ 404.1520, 416.920.  In what now stands as the final decision of the Commissioner, the administrative law judge determined that claimant was severely impaired due to lower back and leg pain, and that while he could not return to his past relevant work, he retained the functional capacity to perform light work limited by only occasional bending and stooping and by alternating sitting and standing.  Relying on a vocational expert's testimony, the ALJ found that there were bench, attendant and other jobs available that claimant could perform with these limitations and thus found him not to be disabled.

On appeal, claimant contends that the ALJ erred in concluding that his testimony regarding the severity of his pain was not credible and in improperly discounting the opinion of his treating physician that he was disabled.  We review the Commissioner's decision to determine whether factual findings are supported by substantial evidence and whether correct legal standards were applied.

See Kepler v. Chater, 68 F.3d 387, 388-89 (10th Cir. 1995). We agree with claimant that the ALJ's credibility analysis was flawed and conclude that the case must be remanded to the Commissioner for further consideration.

## II

Claimant is currently forty-six years old and has an eighth-grade education. He had been working since 1969 as a heavy equipment operator for the City of Tulsa when he injured his back in July 1990, apparently while working, which resulted in lower back and left leg pain. Orthopedic surgeon Dr. Hendricks diagnosed a herniated disk, and in August 1990, he performed back surgery on claimant which included partial hemilaminotomies at L4-5 and L5-S1, a foraminotomy of L5 nerve root, and a partial discectomy at L4-5. On follow-up examinations, Dr. Hendricks concluded that claimant was doing well and in late October 1990, indicated he was ready to return to work, with a forty-pound weight lifting restriction that he suggested be enforced for one year. Claimant returned to work in November 1990, and the city placed him in a janitorial position that was less strenuous than his usual job. He stopped working in September 1991, but the reason is unclear. Claimant contends that he was unable to do the janitorial work and his performance was unacceptable because of pain and numbness in his back and legs. However, his supervisor indicated that he was able to do his job and that his performance was acceptable.

In May 1992, claimant applied for Social Security benefits alleging disability due to his back injury. His application was denied, and he did not challenge that denial. In July 1993 he filed the applications for benefits that are the subject of this appeal. His applications were denied in September 1993. In November 1993, he was in an automobile accident which he contends aggravated his back injury, and he filed a request for reconsideration partially on that basis. See Appellant's App. Vol. II at 159. That request was denied, and he asked for a hearing before an ALJ. Following a hearing, the ALJ concluded that he was not disabled.

Because claimant's primary contention is that the ALJ failed to distinguish between his pre- and post-accident condition, we set forth the post-accident medical evidence in some detail. Ten days after claimant's November 5, 1993 automobile accident, claimant went to his treating physician, Dr. Reed, complaining of increased back and leg pain, along with other symptoms, resulting from the accident. After examining claimant, Dr. Reed ordered X-rays of his lower back and prescribed Vicodin ES (a narcotic pain reliever), Ansaid (an anti-inflammatory agent), and Flexeril (a cyclobenzaprine for relief of skeletal muscle spasms). See Appellant's App. Vol. II at 207-08. On November 24, claimant saw Dr. Hendricks, complaining primarily of low back and left leg pain and numbness. Dr. Hendricks noted that claimant had a considerably restricted range of motion

-4-

and some numbness along the S1 and L5 distributions, but that the strength in his lower extremities was well-maintained. See id. at 212. He recommended conservative treatment consistent with what Dr. Reed was doing, and indicated that claimant needed an anti-inflammatory and pain medication. See id. On examination the following week, Dr. Reed noted that physical therapy, which he apparently had ordered, seemed to help, but the pain recurred three hours later, and there was some indication that the therapy actually made the pain worse. See id. at 204. Dr. Reed scheduled an electromyogram (EMG) and renewed his prescriptions. See id. Following the EMG, which was negative for nerve disease on the left side, Dr. Reed increased the amount of claimant's medications and ordered a magnetic resonance imaging (MRI). See id. at 201. The radiologist reviewing the results of the MRI suspected recurrent herniated disks at L5-6 and L6-S1. See id. at 200. On reviewing the radiologist's report, Dr. Reed referred claimant back to Dr. Hendricks and renewed his prescriptions. See id. at 199.

Claimant visited Dr. Hendricks on January 10, 1994, complaining of continuing low back and leg pain and numbness. He told Dr. Hendricks that some studies had been performed, but he did not know what they were. After reviewing the EMG and MRI results, Dr. Hendricks wrote to claimant that claimant appeared to have a bulging disk at L4-5, and that he hoped that it could be managed nonsurgically with an epidural steroid injection, more physical therapy,

and time.  See id. at 210.  Dr. Hendricks apparently examined claimant on February 2, and in an April 25, 1994 letter, he wrote that, while he did not see the second possibly herniated disk that the radiologist noted, he did see a recurrent L5-6[1] disk herniation on the left side where claimant was symptomatic.  See id. at 249.  Although he had recommended conservative treatment, he had learned from claimant's wife that the pain was continuing, and he stated he thought claimant would probably need another discectomy and possibly a fusion.  See id.

Claimant was examined by Dr. Farrar, D.O., on April 25, 1994.  Dr. Farrar indicated that he had previously examined claimant in September 1990 and February 1991, but there are no reports or notes from these examinations in the record.  Dr. Farrar opined that claimant's condition had deteriorated substantially since his 1991 examination, noting that claimant's lumbar spine range of motion was significantly limited, that he showed increased neurological symptomatology into his left leg since his previous examination, that the MRI revealed two disk herniations, and that claimant reported increased pain since his accident.  See id. at 244-45.  He concluded that claimant had been disabled since his accident, and that failure of continued conservative treatment to improve claimant's condition would necessitate surgical intervention.  See id. at 245.  Although the record does

---

[1]     Claimant appears to have six lumbar vertebrae rather than the usual five, see Appellant's App. Vol. II at 249, and the same herniated disk seems to be variously identified as either L4-5 or L5-6.

not contain evidence of additional examinations by Dr. Reed, he indicated on an insurance form in October 1994 that he also believed claimant was totally disabled.  See id. at 253-54.

**III**

We set out the framework for the proper analysis of the evidence of allegedly disabling pain in Luna v. Bowen, 834 F.2d 161, 163-64 (10th Cir. 1987).  That analysis requires us to

> consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Kepler, 68 F.3d at 390 (internal quotations omitted).  It is clear from the evidence and implicit in the ALJ's decision that claimant established the first two of these elements.  The only part of this analysis at issue here is the ALJ's consideration of claimant's subjective complaints of pain and whether the ALJ properly found claimant's complaints of disabling pain not credible.

Claimant contends that the ALJ's credibility determination was flawed because the ALJ used pre-accident evidence to contradict claimant's post-accident complaints of pain.  Credibility determinations are peculiarly the province of the ALJ, and we will not upset them when they are supported by substantial evidence.

See Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). However, the ALJ's credibility determinations must be closely and affirmatively linked and logically connected to substantial evidence. See Kepler, 68 F.3d at 391. To make his or her credibility findings, an ALJ must consider factors such as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Id. (further quotations omitted). The issue in this case is not so much whether the ALJ considered the appropriate factors as it is whether the evidence on which he relied supported his conclusions regarding the factors he considered.

We agree with claimant that the ALJ's credibility determination is not supported by substantial evidence. The post-accident medical evidence described above indicates that the accident was a significant event; both Drs. Hendricks and Farrar, who had examined claimant before and after the accident, noted increased pain and medical changes that they attributed to the accident. Thus, there is medical evidence to support claimant's contention that his back and leg pain and numbness increased as a result of his accident.

-8-

However, the ALJ virtually ignored the accident in his decision and never expressly considered its effect on claimant's condition. While the ALJ considered a variety of appropriate factors in assessing claimant's credibility, in several instances he used pre-accident evidence to reject claimant's post-accident allegations of pain and impairment. In other instances, the evidence the ALJ used to discount claimant's credibility was irrelevant. We turn to the various factors the ALJ considered:

Low back and leg pain--The ALJ noted that at the hearing in November 1994, claimant stated that he was in constant daily pain that increased with walking, that he was very limited in his abilities to stand, sit and walk for any period of time, and that he could carry or lift only ten to fifteen pounds. The ALJ found this to be inconsistent with his statement to consultative examiner Dr. Dalessandro that his pain comes and goes and is no more than slight. The ALJ also noted that he told Dr. Hendricks that he was doing "pretty well" and was walking up to two miles a day, and Dr. Hendricks thought he was doing "exceptionally well." See Appellant's App. Vol. II. at 16. However, the examination by Dr. Dalessandro to which the ALJ referred occurred in June 1992 (he also examined claimant in September 1993), well before the November 1993 accident. See id. at 185, 191. Moreover, the statements to and impression from

-9-

Dr. Hendricks took place in August and September 1990, shortly after claimant's surgery and before claimant even stopped working. See id. at 217, 219, 220.

Impairments other than low back and leg pain--The ALJ stated that he was "unpersuaded" by claimant's complaints of pain in shoulders and neck and of headaches, vision, hearing and asthma problems, generally because claimant made no attempt to relieve the symptoms. On his request for reconsideration, claimant indicated he had some neck pain. However, he did not claim either on his benefit applications, disability reports, pain questionnaires or at the hearing that his shoulder pain, headaches, vision and hearing problems, or asthma caused or contributed to his claimed disability. We thus fail to see the relevance of claimant's failure to seek relief from these problems.

Physical therapy--The ALJ stated that "although the record shows that he went to therapy before surgery, he did not obtain any after the surgery, although he told Dr. Reed that physical therapy had been helpful." Id. at 16. There is no indication in the record that claimant obtained physical therapy prior to his surgery. Moreover, he stated on his request for reconsideration that as a result of the accident, Drs. Reed and Hendricks "have me going to therapy 3 times a week," id. at 159, and he testified at the hearing that the therapy lasted six weeks, see id. at 40. While he did tell Dr. Reed that physical therapy helped, he also said that the pain returned three hours later and that therapy may actually have made

-10-

the pain worse. See id. at 204. Dr. Hendricks also noted that the therapy may be doing more harm than good. See id. at 212.

Daily activities--The ALJ noted that claimant's daily activities included "personal care, reading the newspaper, feeding his dog, cleaning and caring for his aquariums, visiting friends, driving daily and walking around the house." Id. at 16. The ALJ again noted that he told Dr. Hendricks that he walked up to two miles a day. See id. "Furthermore, although he testified that his wife did all the household chores, he had earlier stated that he did cooking and light cleaning 3 or 4 times a week, up to an hour at a time . . . ." Id. As noted above, the statement regarding the walking was made three years before the accident. Claimant made the statement regarding cooking and cleaning in May 1992, see id. at 138, 140, and he stated that after the accident he could not stand long enough to cook because of the pain and numbness, see id. at 154. Additionally, an ALJ "may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993).

Medications--The ALJ noted that claimant reported in February 1994 that he was taking Vicodin and Tylenol, but in November 1994 reported that he was taking Vicodin, Cyclobenzaprine, and Alprazolam (for relief of anxiety), which claimant indicated had been first prescribed by Dr. Reed in November 1993. The

ALJ stated that this "inconsistency" persuaded him that "claimant has not been consistent in taking medications, although he did testify that he now takes all the reported medications regularly." Appellant's App. Vol. II at 17. The ALJ also noted that "the prescriptions were obtained only a few days before the claimant filed for reconsideration," which suggested that "there was no need for medication until it became necessary to enhance the appearance of disability." Id. Whatever the evidentiary value of claimant's failure to report the same medications on the two forms, we note that after the accident Dr. Reed consistently prescribed pain relievers and anti-inflammatories, and these prescriptions were consistent with Dr. Hendricks' recommendations. See id. at 199, 201, 204, 208, 212. Moreover, while claimant did obtain the prescriptions from Dr. Reed only a few days before filing for reconsideration, that was only a few days *after* he was in the accident, which is why he went to see Dr. Reed in the first place.

Secondary gain--The ALJ stated that "it appears that there is a factor of secondary gain in the maintaining a stance of disability." Id. As evidence of this, the ALJ stated that "claimant has received Worker's Compensation, alleging inability to remember the amount he received in settlement." Id. The ALJ also referred to the inconsistency between claimant's story regarding his termination from work and that of his supervisor. We do not see any relevance to the fact that

claimant also received a Workers Compensation settlement, whether he remembered the amount or not. The reasons stated by claimant and his supervisor for claimant's leaving the City's employment were somewhat different, though not necessarily contradictory. We do note that the supervisor also stated that claimant was not injured on the job, but that appears to be inconsistent with the fact that claimant received Workers Compensation for his injury in 1990.

In sum, almost all of the reasons the ALJ gave for rejecting claimant's contention of disabling pain are either not supported by substantial evidence or are irrelevant. The medical evidence regarding the severity of claimant's impairment was not overwhelming in either direction.[2] That made the credibility determination all the more important.[3] But the flaws in the ALJ's determination undermine his finding that claimant was not credible, which in turn undermines his ultimate determination that claimant could perform most light work and was

---

[2] Because we conclude the ALJ erred in his credibility determination, we need not address claimant's contention that the ALJ improperly rejected the October 1994 opinion of his treating physician, Dr. Reed, except to note that the ALJ's failure to make the pre- and post-accident distinction also affected his decision to reject this opinion. We agree with the ALJ that Dr. Reed's opinion that claimant was totally disabled was brief, conclusory, and unsupported by Dr. Reed's examinations and medical findings. However, in rejecting this opinion, the ALJ relied in part on Drs. Hendricks' and Dalessandro's pre-accident examinations of and reports regarding claimant. See Appellant's App. Vol. II at 14-15.

[3] Since the medical evidence was inconclusive, the ALJ's analysis would have benefitted from a consultative examination. See Thompson, 987 F.2d at 1491.

not disabled. We therefore must remand the case to the Commissioner for further proceedings. In doing so, we do not dictate any result, nor do we mean to imply that claimant's complaints are necessarily credible. We require only that findings be supported by substantial evidence.

## IV

Because the ALJ's decision that claimant's pain does not preclude him from performing light work is not supported by substantial evidence, we REVERSE the district court's judgment and REMAND this case to the district court with instructions to remand the case to the Commissioner for further proceedings consistent with this order and judgment.

Entered for the Court

Robert H. Henry
Circuit Judge