**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 24, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

LYNETTE ROMERO,

      Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,[*]
Commissioner of the Social Security
Administration,

      Defendant-Appellee.

No. 06-6305
(D.C. No. 05-CV-01325-T)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[**]

---

Before **HENRY** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior Circuit
Judge.

---

Plaintiff-appellant Lynette Romero appeals from an order of the district

court affirming the Commissioner's decision denying her applications for Social

Security disability and Supplemental Security Income benefits (SSI).  We have

---

[*]     Pursuant to Fed. R. App. P. 43(c)(2), Michael J. Astrue is substituted for
Jo Anne B. Barnhart as appellee in this appeal.

[**]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

determined that the Commissioner failed to evaluate properly the opinion of her treating physician, Dr. Haddock, concerning her ability to stand and to walk. We therefore reverse and remand with instructions to remand to the Commissioner for further evaluation Dr. Haddock's opinion and its effect on the determination of her residual functional capacity (RFC). While Ms. Romero also challenges the administrative law judge (ALJ)'s evaluation of her cellulitis and obesity, and his assessment of her credibility, we do not discern any error in these areas, and therefore do not require reconsideration of them on remand.

Ms. Romero filed for benefits with a protected filing date of October 29, 2002, alleging disability based on tuberculosis, hepatitis C, asthma, severe degenerative arthritis of the knee, hip pain, and reflux.[1] The agency denied her applications initially and on reconsideration.

On November 18, 2004, appellant received a de novo hearing before an ALJ. The ALJ determined that appellant retained the RFC to perform sedentary work, with only occasional stooping and limited by her "moderate fatigue, anxiety, and discomfort." Aplt. App. at 23. He found that she could not return to her past relevant work as a nurse's aide, but that there were a significant number of other jobs which she could perform in the national or regional economy. He therefore concluded that she was not disabled within the meaning of the Social

---

[1] The ALJ also identified "degenerative disc disease" among her severe impairments. Aplt. App. at 25.

Security Act. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.

We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *See Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989) (quotations omitted).

The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. *See id.* at 751 n.2. If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains a sufficient RFC to perform work in the national economy, given her age, education and work experience. *See id.* at 751.

On appeal, Ms. Romero raises two issues. She first contends that the ALJ erred by developing an RFC that did not include all of her limitations. Specifically, she argues that the RFC is flawed because the ALJ failed to (1) evaluate properly the opinion of her treating physician, Dr. Haddock,

concerning her ability to stand and walk; (2) include a restriction on her ability to sit for a full work day, based on her cellulitis; and (3) give adequate consideration of the effect of her morbid obesity on her ability to work. She also argues that the ALJ failed to properly evaluate her credibility.

### 1. ALJ's RFC Assessment

Ms. Romero contends that the ALJ's RFC was flawed because it failed to include all of her limitations. As noted, the ALJ found that Ms. Romero could perform sedentary work involving only occasionally stooping and that she "would have moderate fatigue, anxiety, and discomfort." Aplt. App. at 23. Based on these limitations, a vocational expert (VE) opined that there were sedentary, unskilled jobs available that Ms. Romero could perform in the national and regional economy. *Id.* at 379-80. Ms. Romero argues, however, that she is actually more severely limited than the ALJ's RFC indicates.

### A. Dr. Haddock's Opinion

The ALJ imposed no restriction on standing or walking in Ms. Romero's RFC, other than the limitations inherent in sedentary work.[2] Sedentary work requires an ability to stand and/or walk "occasionally," 20 C.F.R. §§ 404.1567(a), 416.967(a), up to two hours per day. *See* SSR 96-9P, 1996 WL 374185, at *3. The ALJ's hypothetical question to the VE is consistent with this definition. It

---

[2] He did state that she would suffer from "moderate discomfort," Aplt. App. at 23, but it is unclear what, if any, limitation on her ability to stand and walk can be derived from this general observation.

reflects his assessment that Ms. Romero could stand or walk for up to two hours in a work day. Aplt. App. at 379.

But in a note dated October 29, 2004, Ms. Romero's treating physician Dr. Haddock stated:

> Lynette Romero has a severe problem with her lower back, right hip and thigh. She has pain when she stands or tries to walk over 10 yards. The pain becomes too severe and she must stop and rest. *She is disabled for any work requiring her to stand or walk.*

*Id.* at 287 (emphasis added).

When evaluating the opinion of a treating physician such as Dr. Haddock, the ALJ must follow a sequential analysis to determine whether the opinion is entitled to controlling weight, or whether it is entitled to some lesser, non-controlling weight.[3] Where the ALJ rejects the treating physician's opinion,

---

[3] In the first step of this analysis, the ALJ should consider whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2); *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If the answer to both these questions is "yes," he must give the opinion controlling weight. *See Watkins*, 350 F.3d at 1300. But even if he determines that the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether, or assigned some lesser weight. He does this by applying the factors provided in 20 C.F.R. §§ 404.1527 and 416.927. *See Watkins*, 350 F.3d at 1300. These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is

(continued...)

he must give "specific, legitimate reasons" for doing so. *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

After summarizing Dr. Haddock's opinion, *see id.* at 21-22, the ALJ rejected his ultimate conclusion summarily, noting "[t]here are no treatment records by any physician to support [his] statement" that Ms. Romero was disabled for any work requiring her to stand or walk. *Id.* at 23. This reasoning was the only justification the ALJ provided for also dismissing Dr. Haddock's opinions that Ms. Romero has "severe problem[s] with her lower back, right hip and thigh;" that she "has pain when she stands or tries to walk over 10 yards;" and that "[t]he pain becomes too severe and she must stop and rest." *Id.* at 287.

Dr. Haddock's conclusions concerning Ms. Romero's pain and limitation (separate and apart from his ultimate conclusion about her inability to do any work requiring her to stand or walk) find support in the treatment records and therefore could not be cursorily dismissed for the reason the ALJ gave: lack of medical evidence. The record is replete with evidence that Ms. Romero

---

[3](...continued)

> supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301 (quotation omitted).

experiences difficulties with both standing and walking. Moreover, her limitations on standing and walking appear inconsistent with a full range of sedentary work.

On April 25, 2003, agency consulting physician Dr. Vallis Anthony examined Ms. Romero and found her suffering from degenerative joint disease of the right hip and knee, with marked crepitation. Aplt. App. at 160. He noted that it was very painful for her to be up very long on both her hip and her knee. *Id.* at 158. She could stand for about five minutes, range of motion in her right hip was decreased and painful, and her right knee was swollen and quite tender at the joint line. She walked around the room with difficulty and pain and Dr. Anthony noted that she had a significant limp. The ALJ did not discount Dr. Anthony's observations concerning Ms. Romero's difficulties in standing and walking.

Dr. Anthony's observations were borne out clinically on May 15, 2003, when Dr. Molskness of the Sooner Medical Center examined x-rays of Ms. Romero's right knee. He noted fluid loss in the joint space; marked sclerotic changes involving the articular surface of the medial lateral femoral condyle, medial lateral fibula and tibial table; and thinning of the paterallar femoral joint space. His impression was that she suffered from a severe degree of degenerative joint disease in the knee.

The medical record contains numerous other references to Ms. Romero's back, knee, or joint pain. *See id.* at 92; 113; 116; 141; 149-50; 254; 257; 292.

Notably, she has taken narcotic medications for her pain over the course of many years. The ALJ's cursory statement that there was no medical evidence to support Dr. Haddock's opinion, while perhaps adequate to reject the physician's opinion that she could not do *any* work that required standing or walking, provides an insufficient basis to reject the remainder of the opinion.

But the Commissioner urges us to affirm the ALJ's decision on a different basis: that the jobs he eventually identified do not actually require any standing or walking. At the hearing, Ms. Romero's attorney asked the VE whether an inability to stand or walk would affect her ability to perform the jobs the VE had identified. The VE responded that the unskilled occupations he had listed (which were those the ALJ ultimately relied upon in his decision) typically required no standing or walking. Aplt. App. at 380. The Commissioner cites the VE's response but omits the remainder of the colloquy. The attorney, noting that the ALJ had limited Ms. Romero to sitting for six hours during the work day, followed up by asking the VE whether there were jobs she could perform that would require her to work only for the amount of time she could spend sitting: six hours a day. The VE acknowledged that such a limitation would significantly reduce the sedentary job base. *Id.* at 381. The ALJ's decision makes no mention of the effect of this temporal restriction on the availability of a significant number of jobs that Ms. Romero could perform in the national or regional economy. We cannot, therefore, affirm his decision on this basis.

In sum, even if the ALJ's cursory dismissal of Dr. Haddock's ultimate opinion met the procedural requirements of the sequential analysis and was supported by substantial evidence, he provided no reason for rejecting the remainder of Dr. Haddock's opinion concerning the pain and consequent limitations Ms. Romero experienced with standing or prolonged walking. In particular, the ALJ did not discuss whether, in light of Dr. Haddock's description of her pain on standing and walking and the extensive detail concerning these problems in the medical evidence, a greater restriction on standing or walking than the full two hours associated with sedentary work might be appropriate. *See Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (requiring ALJ to consider "*the degree to which* the physician's opinion is supported by relevant evidence") (emphasis added; internal quotation marks omitted). We must therefore remand for a more complete evaluation of Dr. Haddock's entire opinion. This evaluation should include a complete analysis of the opinion using the sequential analysis discussed in *Watkins*. Also, on remand, if the ALJ wishes to rely on jobs that require little or no standing or walking, he should give consideration to whether such jobs are consistent with any durational limitation on sitting that he finds (such as a limitation on six hours of sitting in an eight-hour work day).

**B. Cellulitis**

Ms. Romero next argues that the ALJ failed to include any restriction on her ability to sit for six hours per day, and her need to elevate her leg, based on her history of cellulitis. As the Commissioner points out, however, Ms. Romero's cellulitis has been only episodic and is currently in remission. Therefore, the ALJ did not err in failing to include limitations due to cellulitis in his RFC.

**C. Obesity**

Ms. Romero further contends that the ALJ failed to give adequate consideration to the effect of her morbid obesity on her ability to work, particularly when considered in combination with her other impairments. Ms. Romero did not allege disability based on obesity, and the ALJ did not list obesity among her severe impairments at step two of the sequential analysis. Although her physicians included obesity as a diagnosis, none of the medical evidence identified any specific restriction on her ability to work attributable to obesity. Nor did she attribute any of her restrictions to obesity in her testimony at the hearing. Finally, the medical records, Aplt. App. at 92, 159, and her testimony at the hearing, *id.* at 358, indicate that her weight at the alleged disability onset date was essentially the same as it had been for a number of years, including during the time she was working. We therefore conclude that the ALJ permissibly determined that her obesity did not constitute a severe impairment because there was no evidence it had "more than a minimal effect on

[Ms. Romero's] ability to do basic work activities." SSR 02-1P, "Titles II and XVI: Evaluation of Obesity," 2000 WL 628049, at *4.

### 2. ALJ's Credibility Assessment

Ms. Romero contends that the ALJ failed to conduct an adequate evaluation of her credibility and therefore wrongly discounted her testimony at the hearing. The ALJ concluded that "the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision." Aplt. App. at 26. In his decision, he identified the factors that he was required to consider when evaluating her subjective complaints. *Id.* at 22 (citing 20 C.F.R. §§ 404.1529 and 416.929, and SSR 96-7p). He then summarized her testimony, discussed a number of the factors, and listed his reasons for discounting the testimony. *Id.* at 23. Specifically, he stated that she "has not been compliant with her diet, medication, is a smoker with asthma and has not always kept medical appointment[s] on a regular basis." *Id.*

In determining a claimant's credibility, the ALJ may consider such factors as attempts to find relief, use of medications, and willingness to try any treatment prescribed. *Luna v. Bowen*, 834 F.2d 161, 165 (10th Cir. 1987). "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). While the ALJ must cite specific evidence relevant to the factors used in evaluating a claimant's

subjective complaints, and explain why if he concludes those complaints are not credible, *see id.*, this process "does not require a formalistic factor-by-factor recitation of the evidence," *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, [the procedural requisites] are satisfied." *Id.* Our review of the ALJ's decision persuades us that the ALJ sufficiently provided his reasons and stated the evidence he relied upon in finding Ms. Romero's testimony only partially credible.

Ms. Romero argues that the ALJ's reasons were not supported by substantial evidence. On the contrary, the record is replete with evidence of her non-compliance with medical advice, including over a dozen occasions in which she was warned to stop mixing methadone and narcotic medications. Aplt. App. at 302-16. While she did reduce the amount she smoked, it is significant that her doctors' advice to quit smoking was made in the context of her asthma, for which she had been admitted to the hospital, even as she continued smoking. Finally, the record does reflect numerous missed appointments with her doctors. We conclude that the ALJ's reasons for discounting her credibility were supported by substantial evidence.

The judgment of the district court is REVERSED, and the case is REMANDED to the district court, with instructions to remand to the Commissioner for further proceedings in accordance with this order and judgment.

Entered for the Court


Robert H. Henry
Circuit Judge