Ramona **KEPLER**, Plaintiff–Appellant,

v.

Shirley S. **CHATER**, Commissioner of Social Security,* Defendant–Appellee.

No. 95–5040.

United States Court of Appeals, Tenth Circuit.

Oct. 17, 1995.

---

* Effective March 31, 1995, the functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103–296. Pursuant to Fed.R.App.P. 43(c), Shirley S. Chater, Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. Although we have substituted the Commissioner for the Secretary in the caption, in the text we continue to refer to the Secretary because she was the appropriate party at the time of the underlying decision.

Paul F. McTighe, Jr., Tulsa, Oklahoma, for Plaintiff–Appellant.

Stephen C. Lewis, United States Attorney, Joseph B. Liken, Acting Chief Counsel, Tina M. Waddell, Acting Deputy Chief Counsel, Christopher Carillo, Lead Attorney, Office of the General Counsel, Social Security Administration, Dallas, Texas, for Defendant–Appellee.

Before BALDOCK, HOLLOWAY, and BRORBY, Circuit Judges.

BALDOCK, Circuit Judge.

Claimant Ramona Kepler appeals from an order of the district court affirming the final decision of the Secretary of Health and Human Services denying her applications for social security disability and supplemental security income (SSI) benefits. Claimant contends she has been disabled since January 1981 due to back problems and pain resulting from curvature of her spine, severe migraine headaches and limited mobility. The administrative law judge (ALJ) denied benefits at step four of the five-part sequential process for determining disability. *See Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir.1988) (discussing five-step process). The ALJ determined that claimant retained the residual functional capacity to perform light work and could return to her past relevant work as a clerical worker. The ALJ therefore concluded that claimant was not disabled; the Appeals Council affirmed, making the ALJ's determination the final decision of the Secretary. We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291.[1]

On appeal, claimant raises three arguments: (1) that the ALJ's determination that she was not disabled due to severe pain is not supported by substantial evidence; (2) that the ALJ erred by relying on testimony from a vocational expert elicited by incomplete hypothetical questions; and (3) that the ALJ erred by not determining the specific mental and physical demands of her past work and comparing those demands with her residual functional capacity, as required by Social Security Ruling 82–61 and *Henrie v. United States Department of Health & Human Services,* 13 F.3d 359 (10th Cir.1993). We review the Secretary's decision to determine whether it is supported by substantial evidence and whether the correct legal standards were applied. *Hill v. Sullivan,* 924 F.2d 972, 973 (10th Cir.1991). Substantial evidence is adequate relevant evidence that a reasonable mind might accept to support a

---

1. After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed.R.App.P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

conclusion. *Hargis v. Sullivan,* 945 F.2d 1482, 1486 (10th Cir.1991).

Claimant's insured status expired on December 31, 1985. Thus, to be entitled to disability benefits, she must prove she was totally disabled by this date. *Henrie,* 13 F.3d at 360. To be entitled to SSI benefits, claimant must show that she is totally disabled, but she cannot receive benefits for any period prior to the filing of her application. 20 C.F.R. § 416.335.

Claimant was born in 1955 and worked at a variety of clerical jobs from 1971 to 1983.[2] She has been diagnosed since adolescence as having right thoracic and left lumbar (double curvature) scoliosis. At age twelve, she began wearing a Milwaukee brace, a type of walking brace extending from the coccyx to the chin, to stabilize the scoliosis, and she wore the brace for about four years. A medical report in 1974 indicated that she complained of severe lower and middle back pain. R. Vol. II at 220. At that time, it did not appear that her symptoms were severe enough to warrant surgery. *Id.*

In December 1983, she again sought medical treatment, complaining of left lumbar pain radiating up to her scapula and shoulder that apparently had not responded to chiropractic treatment. *Id.* at 219. X-rays showed that the degree of curvature of her spine had increased since 1974. *Id.* at 218–19. In January 1984, she was diagnosed with "[a]dult right thoracic and left lumbar scoliosis secondary to an idiopathic adolescent scoliosis," and had surgery for insertion of Harrington rods and fusion of her spine. *Id.* at 207. Though she was apparently doing well shortly after the surgery, on examination one year later, she complained of "persistent left scapular discomfort" that seemed "to be worse with sitting or standing." *Id.* at 215. Her surgeon, Dr. Tanner, believed this was caused by a "fixed deformity at the L5/Sacrum causing the pelvis tilt." *Id.*

In November 1985, she continued to complain to Dr. Tanner of pain in her left shoulder and scapula region. She reported being

treated unsuccessfully by an acupuncturist and "phsycoligist [sic]," and also stated that she had "considerable pain in riding in a car or sitting for any length of time." *Id.* at 214. Dr. Tanner thought that her pain in the shoulder area may be due to cervical radiculitis. *Id.* In July 1986, she again saw Dr. Tanner complaining of left lower back pain. Dr. Tanner's report stated that on physical examination, "attempt at motion of her lower back produces discomfort. Right lateral side bending causes left lower lumbar pain. Extension and left lateral rotation also causes discomfort." *Id.* at 213. Dr. Tanner's impression was that "the majority of her symptoms are due to LS strain." *Id.* He recommended a "conservative lower back care program" and indicated that she "wear an LS corset and should be at bedrest for the next 2 weeks time." *Id.* He also prescribed Darvocet and Halcion, the latter of which was refilled in March 1987. *Id.*

In August 1987, she again complained to Dr. Tanner of pain in her left scapula area. *Id.* at 212–13. An EMG examination of her neck, left shoulder and left upper extremity was interpreted to be normal. *Id.* at 210, 212. At this time, Dr. Tanner's impression was "[c]hronic left scapular strain with thoracic outlet syndrome, satisfactory thoracolumbar arthrodesis as treatment for scoliosis." *Id.* at 212. He prescribed a physical therapy and isometrics program. *Id.*

Claimant's medical records from 1988 do not appear to indicate complaints of back pain, *id.* at 226, but those from late 1989 show her again complaining of back pain, *id.* at 225, 228. In July 1990, Dr. Field, an orthopedic surgeon, stated she described "marked and severe dorsal pain hurting through to the sacrum." *Id.* at 228. Because of her pain and his conclusion that the lumbar fusion was solid and the Harrington rods were no longer needed, Dr. Field surgically removed the rods. *Id.* In October 1990, Dr. Field reported that "[t]his patient has had improvement of her back pain. She is neurologically intact with full motor func-

**2.** We note that this work history appears inconsistent with her applications for benefits indicating that she has been disabled since 1981. Additionally, though the ALJ concluded in the first step in his evaluation that she had not worked since January 1, 1981, R. Vol. II at 14, he later considered work she did in 1982 and 1983 as past relevant work, *id.* at 26–27.

tion and no evidence of radiculopathy. There is some evidence of mild hyperflexia but no severe overt problems." *Id.* at 230.

Claimant filed her applications for social security benefits in June 1990. After a hearing on June 7, 1991, the ALJ referred her to Dr. Mancuso for psychological examination. Dr. Mancuso diagnosed her as having a hysterical personality, but concluded that she was "not precluded from working by virtue of mental impairments or psychiatric disorder." *Id.* at 250. After a second hearing on September 16, 1991, the ALJ concluded that claimant was not disabled because she had the residual functional capacity to perform light work and could return to her past relevant work.

At the hearings, claimant described her condition as varying day to day, some days having "serious" low back pain, but the next day "my left shoulder and arm [are] completely numb." *Id.* at 61. Depending on how she feels, she uses a neck brace, complete torso girdle, or half-torso girdle. *Id.* at 68–69. She testified that prior to December 31, 1985, she could only sit comfortably for two hours, stand for twenty minutes, and walk for half a mile. *Id.* at 71–72. At the time of the first hearing, she claimed she could only sit for an hour, stand for twenty minutes, and walk one block once a week. *Id.* at 63, 65, 73–74. She takes primarily over-the-counter but also some prescription medication; the medication sometimes provides relief but for less than two hours at most. *Id.* at 74, 96, 245. On an average day, she spends seventy percent of her time lying down, but on some days she cannot get out of bed. *Id.* at 76. She stated that she can wash dishes, clean toilets and sinks, and do some laundry, but cannot sweep, mop or dust, can cook dinner only three days a week, cannot run errands or go grocery shopping, and drives only in an emergency. *Id.* at 47, 60–62, 64. She uses a wheel chair to go to a shopping mall or flea market. *Id.* at 64–65.

■ Claimant contends she is disabled and has been since prior to December 31, 1985, due to severe pain. However, none of her treating physicians have diagnosed her as having disabling pain. "To establish disabling pain without the explicit confirmation of

treating physicians may be difficult. Nonetheless, the claimant is entitled to have his nonmedical objective and subjective testimony of pain evaluated by the ALJ and weighed alongside the medical evidence. An ALJ may not ignore the evidence and make no findings." *Huston v. Bowen,* 838 F.2d 1125, 1131 (10th Cir.1988) (citations omitted). As we have stated often before, we set out the framework for the proper analysis of the evidence of allegedly disabling pain in *Luna v. Bowen,* 834 F.2d 161 (10th Cir.1987).

> "We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling."

*Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir.1994) (quoting *Musgrave v. Sullivan,* 966 F.2d 1371, 1375–76 (10th Cir.1992) (citing *Luna,* 834 F.2d at 163–64)); *see also Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir.1993).

The ALJ did address claimant's complaints of disabling pain; however, he did so in conclusory fashion. After noting the general regulations and law governing assessments of pain, the ALJ stated that

> [t]he [ALJ] recognizes that the claimant may experience some degree of pain and discomfort. However, mild to moderate pain is not, in itself, incompatible with the performance of sustained work activity. Neither the objective medical evidence nor the testimony of the claimant establishes that the ability to function has been so severely impaired as to preclude all types of work activity.

> After careful evaluation of claimant's signs and symptoms; the nature, duration, frequency, and intensity of the pain; the factors precipitating and aggravating the pain; the dosage, effectiveness, and side effects of the medication taken for relief of pain; the claimant's functional restrictions and the combined impact on the claimant's daily activities, the [ALJ] finds that the claimant is not suffering from a totally

disabling pain syndrome according to the criteria established in 20 CFR 404.1529 and 416.929 as interpreted by Social Security Ruling 88–13 and *Luna*. . . .

R. Vol. II at 24–25.

"[I]t is well settled that administrative agencies must give reasons for their decisions." *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir.1988). Here, the ALJ gave his conclusion but not the reasons for his conclusion. The ALJ stated that he was applying the framework set forth in *Luna*, but we are left to speculate what specific evidence led the ALJ to find claimant's pain was not disabling.

Though the ALJ did not state whether the objective evidence established a pain-producing impairment or whether there was a loose nexus between that impairment and claimant's subjective complaints of pain, there appears to be evidence that claimant's scoliosis caused her some degree of pain. Assuming that "objective medical evidence showed that [claimant] had a back problem producing pain, the ALJ was required to consider her assertions of severe pain and to 'decide whether he believe[d] them].' " *Thompson*, 987 F.2d at 1489 (quoting *Luna*, 834 F.2d at 163). To do this, he should have considered factors such as

> "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence."

*Id.* (quoting *Hargis*, 945 F.2d at 1489) (further quotation omitted). Though the ALJ listed some of these factors, he did not explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible. Moreover, there is evidence that could be viewed as supporting claimant's contention: she has consistently sought medical treatment, including two surgeries, for her back pain; she has taken medication to relieve her pain, though it works only sporadically; her daily activities have been greatly restricted; the ALJ noted that "Dr. Mancuso went to great lengths to point out that none of claimant's treating physicians have suggested that her complaints were functional, or malingering in nature," R. Vol. II at 18; and the ALJ himself "found the claimant's testimony to be frank and sincere but credible only to the extent that it is reconciled with claimant's abilities to perform light work activities," *id.* at 22.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir.1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston*, 838 F.2d at 1133 (footnote omitted); *see also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir.1992) (ALJ "must articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical); *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir.1988) ("failure to make credibility findings regarding . . . critical testimony fatally undermines the Secretary's argument that there is substantial evidence adequate to support his conclusion that claimant is not under a disability"). Here, the link between the evidence and credibility determination is missing; all we have is the ALJ's conclusion.

We therefore order a limited remand of this case for the Commissioner to make express findings in accordance with *Luna*, with reference to relevant evidence as appropriate, concerning claimant's claim of disabling pain. *See Rainey v. Department of Health & Human Servs.*, 48 F.3d 292, 293 (8th Cir. 1995) (remanding for "express determinations regarding [claimant's] credibility"); *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir.1988) ("Failure to indicate the credibility choices made and the basis for those choices in resolving the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints requires reversal and remand.") (quotation omitted). We do not dictate any

result. Our remand "simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case." *Huston,* 838 F.2d at 1132.

■ Because we are remanding the case on the pain issue, we briefly address the other issues claimant raises. As presented on the record before us, we find no merit to claimant's other contentions of error. The ALJ's questioning of the vocational expert was not improper. An ALJ has no obligation to question a vocational expert if the claimant can return to past relevant work. *Glenn v. Shalala,* 21 F.3d 983, 988 (10th Cir.1994). Moreover, the ALJ's questions addressed only the impairments he found were supported by substantial evidence. *See Talley v. Sullivan,* 908 F.2d 585, 588 (10th Cir.1990). Additionally, the record contained sufficient evidence regarding the demands of claimant's past relevant work to satisfy the ALJ's duty of inquiry under *Henrie,* 13 F.3d at 361.

We therefore REMAND this case to the district court with instructions to remand the case to the Commissioner for the purpose of making express findings in accordance with *Luna* concerning claimant's claim of disabling pain and for any further proceedings the ALJ finds necessary in light of those new findings.