**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 9 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

LOUISE S. ROBERTS,

Plaintiff-Appellant,

v.

JOHN J. CALLAHAN, Acting
Commissioner of Social Security,[*]

Defendant-Appellee.

No. 96-7133
(D.C. No. CV-95-283-B)
(E.D. Okla.)

ORDER AND JUDGMENT[**]

Before BRORBY, BARRETT, and MURPHY, Circuit Judges.

---

[*]     Effective March 31, 1995, the functions of the Secretary of Health and
Human Services in social security cases were transferred to the Commissioner of
Social Security.  See P.L. No. 103-296.  John J. Callahan was appointed Acting
Commissioner of Social Security, effective March 1, 1997.  Pursuant to Fed. R.
App. P. 43(c), John J. Callahan is substituted for Shirley S. Chater as the
defendant in this action.

[**]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiff appeals the district court's order affirming the denial of plaintiff's application for supplemental security income (SSI). Plaintiff, who was born in 1954, applied for SSI in December 1992, alleging disability due to back and lung problems. In what became the final decision of the Commissioner, the administrative law judge (ALJ) concluded that plaintiff had severe impairments that limited her to sedentary work that would not require repetitive bending or stooping and that would not expose her to respiratory irritants. In light of these limitations, the ALJ concluded that plaintiff could not perform her past relevant work as a nurse's aide. Based on testimony from a vocational expert, the ALJ further concluded that plaintiff could perform a significant number of other jobs in the national economy and, therefore, that plaintiff was not disabled.

On appeal, plaintiff challenges the ALJ's assessment of her residual functional capacity (RFC) on two grounds. First, she challenges the ALJ's finding that her allegations of pain and resulting limitations were not entirely credible. Second, she contends that the ALJ's determination that she could do limited sedentary work was not supported by substantial evidence. We review the

Commissioner's decision to determine whether the correct legal standards were applied and whether the findings are supported by substantial evidence in the record viewed as a whole. See Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1028 (10th Cir. 1994). "If supported by substantial evidence, the [Commissioner's] findings are conclusive and must be affirmed." Sisco v. United States Dep't of Health & Human Servs., 10 F.3d 739, 741 (10th Cir. 1993). Based upon our review, we conclude the Commissioner applied the correct legal standards and that substantial evidence supports the Commissioner's determination that plaintiff is not disabled.

The ALJ found that plaintiff's allegations of severe limitations in her ability to sit, stand, walk, lift or carry as a result of pain were exaggerated. Plaintiff challenges this finding on the ground that it is not tied to substantial evidence in the record, as required by Kepler v. Chater, 68 F.3d 387 (10th Cir. 1995). In Kepler, we rejected as insufficient the ALJ's mere recitation of a laundry list of factors he considered, followed by a conclusion that the claimant was not credible. 68 F.3d at 391. Instead, we said that an ALJ must link his credibility determination to the evidence of record. Id. Here, the ALJ did precisely that, by discussing the specific evidence that led him to believe that plaintiff's pain was not as limiting as she alleged. Plaintiff also challenges the ALJ's credibility determination on the grounds that the ALJ improperly

substituted his opinion for that of medical experts and that he rejected plaintiff's explanation that she did not have recommended back surgery because she could not afford it. The record does not support either of these contentions. The ALJ's credibility determination is supported by the evidence, and we must uphold it on appeal. See Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990).

Plaintiff also challenges the ALJ's assessment of her ability to work on the ground that she cannot perform the prolonged sitting required of sedentary work due to her back problems. The medical records show that, beginning in late 1991, plaintiff complained sporadically of low back pain. She went to a chiropractor for spinal manipulation several times a week in 1991 and 1992. She first complained of low back pain to physicians at the Carl Albert Indian Health Facility in October 1992. At that time she had mild lower back tenderness but a full range of motion.

In March 1993, Dr. Lonian examined plaintiff in connection with her disability claim. His report notes "some discomfort in the low back with sitting, lying down, or standing. This has been present since 1988." Appellant's App., Vol. II at 200. On examination, plaintiff had a full range of motion, with no muscle spasm or tenderness. A chest x-ray taken in April 1993 revealed that

plaintiff had "very mild dextroscoliosis[1] of the thoracic spine," id. at 205, but several examinations in April and May of 1993 showed no tenderness or swelling of plaintiff's back. In July 1993, plaintiff complained of lower back pain to a physician at the Chicksaw Nation Health Center. She indicated that she had been experiencing lower back pain radiating into her legs for a week. On examination, plaintiff had "no pain w/ ROM." Id. at 229. She was treated with Motrin, heat and rest. She was also referred for x-rays of her spine, which showed grade II spondylolisthesis[2] of the L5 disc on the S1 disc, with a markedly narrowed disc space at the L5-S1 level. The facet joints also showed degenerative changes, but all the other disc interspaces were well maintained. See id. at 249. Plaintiff was then referred to Dr. Carlson, an orthopedic surgeon.

Dr. Carlson examined plaintiff in January 1994 and found her to be "very flexible." Id. at 257. Plaintiff could perform straight leg raising to ninety degrees without pain, but did have "tenderness of the lower lumbar spine" and "minimal gluteal tenderness." Id. Plaintiff told Dr. Carlson that she avoided lifting and bending because of back pain, but did not mention any difficulty sitting. To the contrary, she told Dr. Carlson that her back pain worsened with

---

[1]     Dextroscoliosis is a lateral curvature of the spine toward the right. See Stedman's Medical Dictionary 426, 1394 (25th ed. illus. 1990).

[2]     Spondylolisthesis is the "forward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or upon the sacrum." Stedman's Medical Dictionary 1456 (25th ed. illus. 1990).

vigorous activity. The management options Dr. Carlson discussed with plaintiff included "continued restricted activity and Motrin" and the possibility of an "MRI scan followed by lumbrosacral fusion." Id. The record does not reflect that Dr. Carlson saw plaintiff again after her initial visit in January. In April 1994, however, Dr. Carlson did complete a single-page health examination form for the Chicksaw Nation Social Services. On the form, he indicated that plaintiff's "physical capabilities [are] very limited" and that he had recommended "decreas[ing] activities to pain tolerance" and had discussed "surgical stabilization." Id. at 258. In the section concerning employability of the patient, Dr. Carlson put a check mark in the blank next to "Not Employable," but also wrote "possible" in the blank next to "Light Manual Labor." Id.

At the hearing before the ALJ in June 1994, plaintiff testified that her back hurts whether she stands, sits, or lays down. When asked what she did with her time, plaintiff said "I just lay around and watch tv," id. at 35, though she later said she can clean up, dust, and do the dishes if she takes breaks. Plaintiff testified that after she stands for thirty minutes she tries to get off her feet by sitting or laying down, and that after she sits for fifteen minutes or so she has to get up and move around a little before sitting back down. She said that bending over hurts her back, as does picking up something heavy, like a sack of potatoes. Plaintiff testified that she used to be very athletic; now her hobbies are more

sedentary, consisting of reading and sketching. Plaintiff also said that she can drive without trouble, as long as she drives a car with an automatic transmission.

The vocational expert who testified at the hearing identified a number of different sedentary jobs that would not expose plaintiff to respiratory irritants, would not require repetitive bending or stooping, and would permit an individual to stand up, stretch for several minutes, and reposition herself as often as every thirty minutes. After concluding that plaintiff's abilities to stand, sit, walk, lift, and carry were not as great as she alleged, the ALJ determined that there were a number of other jobs plaintiff could perform despite the limitations she did have, based on the vocational expert's testimony. The ALJ's determination is entirely consistent with the medical evidence of record.

The judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED.

Entered for the Court

James E. Barrett
Senior Circuit Judge