**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 18 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DANELL F. COOK,

       Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

       Defendant-Appellee.

No. 99-6000
(D.C. No. 97-CV-95)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**   *

---

Before **PORFILIO** , **BARRETT** , and **HENRY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# I

Danell F. Cook appeals from the district court's decision affirming the Commissioner's denial of her applications for Social Security disability insurance and supplemental security income benefits. Applying the same standards as did the district court, we review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the appropriate legal standards have been correctly applied. *See Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994).

On appeal, Ms. Cook contends that the administrative law judge, whose decision stands as the final decision of the Commissioner, erred in the following ways: his finding that she could perform the full range of sedentary work is not supported by substantial evidence, and in particular, his credibility analysis is flawed; the ALJ improperly rejected the opinion of Ms. Cook's treating physician; the ALJ failed to meet the Commissioner's step-five burden to demonstrate that she could perform the full range of sedentary work; and the ALJ improperly relied on the Medical-Vocational Guidelines. Because we conclude the ALJ's analysis of Ms. Cook's credibility is inadequate and therefore does not provide substantial evidence to support his finding rejecting her claim of disabling pain, we reverse and remand for further proceedings.

## II

Ms. Cook was born in 1949 and completed the ninth grade in school. She has past work experience as a salad bar server, desk clerk and assembly worker. She underwent a double mastectomy in 1987 followed by insertion of silicone breast implants. The implants apparently have been leaking for some time.

Ms. Cook has been complaining of pain, particularly in her shoulders, but also in her hands, hips and knees, since at least December 1993 when she first visited Dr. Bartel. At that time, Dr. Bartel found that while she had a full range of motion, she had proximal weakness in her shoulders and hips, where her strength was only 70 to 80% of normal, her shoulder muscles had atrophied bilaterally, and there was diffuse muscle tenderness to palpation. Following a variety of tests, Dr. Bartel concluded in January 1994 that she had polymyositis, a chronic, progressive inflammation of muscles usually characterized by pain, weakness and fatigue, and that there was evidence of human adjuvant disease (auto-immune disease). He recommended that she have her breast implants removed as soon as possible and prescribed anti-inflammatory medication. In June 1994, Dr. Bartel found that she had decreased range of motion in both shoulders and tenderness in her biceps. He prescribed pain and anti-inflammatory medication and scheduled her for trigger point injections in her shoulder.

In July 1994, on referral from Dr. Bartel, Ms. Cook visited Dr. Herron complaining of continuing shoulder pain that increased with movement. On examining her, Dr. Herron noted that she had no limitation in her shoulder movement until approximately 85 degrees of abduction or forward flexion bilaterally. [1] At that point, she had "breakaway pain." Internal and external rotation of her arms caused significant pain, and her biceps tendon was particularly tender. Dr. Herron diagnosed her as having rotator cuff tendinitis, bilateral biceps tendinitis and polymyositis secondary to silicone breast implant leakage. He injected her shoulder and biceps tendon with an anti-inflammatory steroid (Depo-medrol).

In August 1994, Ms. Cook returned to Dr. Bartel complaining that the injections had not helped her pain. Dr. Bartel found that she showed continued decreased range of motion in her shoulders with tenderness near her biceps and along her supraspinatus tendon. He also found that she had continued good strength with deep tendon reflexes and sensory findings within normal limits. His assessment was polymyositis, human adjuvant disease and biceps tendinitis. [2]

---

[1] There is no indication in the record whether this indicates good or poor shoulder movement.

[2] The record contains one other medical "report" from Dr. Bartel dated August 1995. This report stated that Ms. Cook "is unable to bend, sit, lift, stand, walk, carry, push, or pull with her hands, feet, or arms. Because of this limitation she is considered disabled from gainful employment." Appellant's App. Vol. II at

(continued...)

In January 1995, she went to the emergency room at Duncan Regional Hospital complaining of chronic pain in her chest wall, around her breast tissue and in all of her joints. She told the doctor that she had been diagnosed with polymyositis that was thought to be due to her leaking silicone breast implants. The doctor noted that she did not want to hear about options for removing her implants, but wanted pain medication. In June 1995, Ms. Cook visited Dr. Criswell complaining of bilateral ear pain, muscle spasms and pain in all joints and muscles and leaking breast implants. He treated her ear pain, which was the only complaint within his area of expertise.

In her applications for benefits filed in February 1994, Ms. Cook claimed she has been disabled since March 1992 due to chronic joint pain and muscle weakness affecting her hands, shoulders, hips and knees. Her applications were denied initially and on reconsideration. Following a hearing at which Ms. Cook was the only witness to testify, the ALJ found she was severely impaired by polymyositis and human adjuvant disease. Although the ALJ found that she could not perform her past relevant work, which had all been performed at the light exertional level, he found that she could perform the full range of sedentary work

---

[2](...continued)
134. The ALJ permissibly rejected this conclusory opinion because there is no indication what medical facts it is based on and it is inconsistent with Dr. Bartel's other reports. *See, e.g.*, *Castellano*, 26 F.3d at 1029 (discussing reasons for rejecting treating physician's opinion).

unhindered by any nonexertional limitations. Relying on the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 201.18 and 201.24, the ALJ concluded that Ms. Cook was not disabled. *See* 20 C.F.R. §§ 404.1520(f) and 416.920(f). The Appeals Council denied her request for review, and she then brought this action challenging the ALJ's decision.

## III

Because we conclude the ALJ committed reversible error in his analysis of Ms. Cook's credibility, we focus on that issue. The crux of her claim is that she experiences disabling pain. "To establish disabling pain without the explicit confirmation of treating physicians may be difficult. Nonetheless, the claimant is entitled to have his nonmedical objective and subjective testimony of pain evaluated by the ALJ and weighed alongside the medical evidence." *Huston v. Bowen*, 838 F.2d 1125, 1131 (10th Cir. 1988). That requires that the ALJ assess the evidence of allegedly disabling pain under the framework set forth, inter alia, in *Luna v. Bowen*, 834 F.2d 161, 164-65 (10th Cir. 1987). *See Kepler v. Chater*, 68 F.3d 387, 390 (10th Cir. 1995). The following is the ALJ's *Luna* analysis:

> In determining that the claimant has the residual functional capacity for sedentary jobs, the Administrative Law Judge has considered the claimant's subjective complaints in accordance with *Luna* . . . , 20 C.F.R. 404.1529/416.929, and Social Security Ruling 88-13. As set forth above, the claimant's subjective complaints are inconsistent with the hearing record as a whole. Specifically, the lack of objective medical evidence to support the complaints; irregular

medical treatment; lack of significant medical restrictions on activities; and response to medication, dictate a finding that the claimant's subjective and non-exertional complaints have had no significant impact on her ability to perform sedentary jobs.

Appellant's App. Vol. II at 15.

As we explained in *Kepler*, we generally defer to an ALJ's credibility determinations, but "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." 68 F.3d at 391 (quotation omitted). Although the ALJ considered factors generally relevant to the credibility analysis, *see, e.g.*, *id.*, in his terse discussion, he failed to connect them to the evidence. Further, he did not address uncontroverted evidence he chose not to rely on, *see Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996), and some of his findings appear contrary to the evidence. We address the four factors he considered, and the weaknesses in his analysis, in turn:

*Lack of objective medical evidence to support the complaints* --We simply do not know what the ALJ means by this. There certainly appears to be objective medical evidence supporting her allegation of shoulder pain, which has been her primary complaint. Dr. Bartel had found that her shoulder strength was only about 70 to 80% of normal, that her shoulder muscles had atrophied, and that her muscles were tender. Dr. Herron noted that she had significant pain on rotation of her arms. Both Drs. Bartel and Herron diagnosed polymyositis, presumably

-7-

involving her shoulder muscles, and biceps tendinitis, and Dr. Herron also diagnosed rotator cuff tendinitis. They gave her pain medication and steroid injections to alleviate her pain. We agree that there is little if any objective medical evidence supporting her complaints of disabling pain in her hands, hips and knees. Yet, the ALJ's broad statement that there is no objective medical evidence to support her subjective complaints is contrary to the evidence in the record.

*Irregular medical treatment* --As the Commissioner points out, Ms. Cook sought medical treatment on five occasions in 1994 and twice during 1995. (The ALJ issued his decision in December 1995.) While these visits might be infrequent enough to help support a conclusion that her pain is not as severe as she claims, she contends that she was unable to afford additional treatment, which may justify her failure to pursue such treatment. *See, e.g.*, S.S.R. 96-7p, 1996 WL 374186, at *7-*8; *Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir. 1985). There is some, somewhat ambiguous, evidence in the record supporting her contention that she has not been able to afford medical treatment. She indicated on several forms that she could not afford further treatment or to have her implants removed, she stated at the hearing that one of the reasons she was seeing Dr. Bartel was because he was willing to wait for payment, and she contended to the Appeals Council that she could not afford treatment.

*Lack of significant medical restrictions on activities*   --We agree that Ms. Cook's doctors have not placed restrictions on her activities. On the other hand, we note that her description of the limited nature of her activities is not inconsistent with someone experiencing considerable pain.

*Response to medication*   --As the Commissioner seems to admit, the record does not contain substantial evidence supporting this finding. Contrary to the ALJ's statement that Ms. Cook's shoulder injections were successful, the only evidence regarding the effectiveness of the injections is Ms. Cook's statement to Dr. Bartel that they did not give her any relief. The only other medication she took was pain and anti-inflammatory medication, which she indicated did not provide her significant relief. She also testified that the pain medication she took made her nauseous and very drowsy.

Attempting to bolster the ALJ's credibility analysis, the Commissioner contends that the fact that Ms. Cook did not have surgery to remove her leaking breast implants, as several doctors recommended, undermines her allegations of disabling pain. However, although the ALJ mentioned her failure to have this surgery, we do not read his decision as relying on this fact for any of his findings or conclusions. Moreover, as noted above, Ms. Cook indicated that she could not afford this surgery.

In sum, we conclude that the ALJ neither linked his findings regarding Ms. Cook's credibility to the evidence as required by *Huston* and *Kepler*, nor adequately considered all of the evidence relevant to the credibility determination. As a result, his finding regarding her credibility is not supported by substantial evidence, and we must remand the case for further proceedings. We do not mean to imply that Ms. Cook's complaints of disabling pain should necessarily be found credible. But contrary to what the Commissioner asks us to do--i.e., ignore the ALJ's incorrect finding with respect to her response to medication and consider her failure to have her implants removed even though the ALJ did not--we may not reweigh the evidence to draw a conclusion supporting the ALJ's determination. *See Winfrey v. Chater*, 92 F.3d 1017, 1020-21 (10th Cir. 1996); *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

**IV**

Because the ALJ's decision that Ms. Cook's pain does not preclude her from working is not supported by substantial evidence, we REVERSE the district court's judgment and REMAND this case to the district court with instructions to remand the case to the Commissioner for further proceedings consistent with this order and judgment.

Entered for the Court


Robert H. Henry
Circuit Judge