**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 12 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DONNA J. HOLLENBACH,

        Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security
Administration,

        Defendant-Appellee.

No. 02-2231
(D.C. No. CIV-01-0551 JP/RLP)
(D. N.M.)

---

**ORDER AND JUDGMENT**  *

---

Before **BRISCOE** , **PORFILIO** , and **ANDERSON** , Circuit Judges.

---

      After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Claimant Donna J. Hollenbach appeals the district court's affirmance of the decision by the Commissioner of Social Security denying her applications for disability benefits and supplemental security income. Because the decision is supported by substantial evidence and no legal errors occurred, we affirm.

On May 5, 1995, claimant was involved in a serious car accident. As a result, she suffered several fractured ribs; an injury to the ligaments and soft tissue of her neck at C6-7 with a possible small disc protrusion; pain and weakness in her arms; headaches with dizziness and vomiting; abnormal alignment of the thoracic spine with wedging at T-6; a probable nondisplaced fracture of the manubriosternal joint with mild arthritis; temporomandibular joint syndrome (TMJ); and a fractured right knee fibular head. Claimant's x-rays also showed mild degenerative changes in her thoracic and lumbar spine.

After receiving emergency care at the University of New Mexico Hospital (UNMH), claimant was treated by orthopedic surgeon Swajian from May 12, 1995 until October 4, 1995. An initial physical exam of claimant revealed extensive bruising, reduced range of motion in her neck and back, pain and popping in her jaw, right knee abnormality, slight sensory loss in the tibial region, uneven shoulder height, muscle spasms, and partial hearing loss. Aplt's App., Vol. II at 157-59. Dr. Swajian opined that claimant suffered a cerebral concussion, cervical dorsal sprain/strain, lumbar dorsal sprain/strain, TMJ syndrome, chondromalacia,

and pelvic and scapular instability. *Id.* at 159-60. He disagreed with the UNMH's notation of a bulging disc, however. *Id.* at 159.

In July 1995, Dr. Swajian noted that claimant's rib and chest pain had subsided "markedly," and her right fibular fracture was ninety percent healed with good stability. *Id.* at 152. He prescribed an eight-week course of physical therapy. In September 1995, the physician noted that claimant continued to have muscle spasms in her neck and upper back, but that physical therapy had helped resolve her subjective complaints. *Id.* at 149. Dr. Swajian was concerned about claimant's reports of increased headaches and dizziness and recommended she return to a neurologist. Claimant did not do so, however.

On October 4, 1995, Dr. Swajian reported that plaintiff's range of motion had improved substantially and that her pain was reduced. *Id.* at 170. He noted that the physical therapy had shown good results, and recommended sending claimant to a spa-type program to accommodate her transportation needs. *Id.* at 170-71. Claimant did not return to Dr. Swajian after this date.

Claimant was evaluated by neurologist Berger in May and June 1995. Dr. Berger noted claimant's limited range of motion in her neck, but otherwise found good muscle tone, bulk, and strength and sensation. After reviewing claimant's CT scan, EEG, MRI, EMG, and x-rays, Dr. Berger concluded that claimant had no spinal lesions compressing neural structures; that her headaches

were consistent with trauma; that her back pain was most likely musculoskeletal in nature; and that her prognosis for eventual recovery was good. *Id.* at 146-48. Dr. Berger concluded that no further neurological diagnostic tests were necessary. *Id.* at 146.

Claimant was also treated by dentist Clifford, who diagnosed her with TMJ syndrome, including myofascitis, cervicalgia, tinnitus, and vertigo. *Id.* at 165. He treated claimant with splints and injections. In August 1995, claimant complained to Dr. Clifford that her headaches had returned, stating that she had been working out and may have done too much. *Id.* at 161.

In July 1995, claimant was seen at the UNMH emergency room with complaints of upper right quadrant pain and cramping. Claimant was diagnosed with gastro-esophogeal reflux disease, a small hiatal hernia in the esophagus, and a congenital anomaly of the liver. By January 1996, claimant reported her stomach bloating and pain had improved, but she continued to have heartburn.

In May 1996, claimant sought treatment from Dr. Merchant for back pain. Although this family physician had treated claimant in 1993 and 1994 for colds and sore throats, there is no evidence that he treated claimant for her accident injuries before May 1996. Dr. Merchant noted tenderness and spasm in claimant's upper spine and right upper abdominal tenderness, and prescribed pain medication and antacids. *Id.* at 186. In June 1996, he again noted tenderness and

spasm in claimant's neck and back, and tenderness in her chest wall and knee. Dr. Merchant diagnosed claimant with cervical, thoracic and lumbar pain and spasm, knee and anterior thigh pain, and depression. *Id.* at 184. He prescribed pain medication and an antidepressant, and suggested claimant consult with Dr. Berger to develop an at-home rehabilitation program.

Claimant filed for disability and SSI benefits in May 1996, alleging she was unable to work after March 5, 1995, due to back and knee injuries, headaches, depression, jaw and gastric problems. In September 1996, she was sent for a consultative psychological examination with Dr. Mellon. Claimant denied any former treatment for depression. She appeared tired, cried, and had a moderately depressed mood with a decreased affect. She had normal psychomotor activity, orientation, attention, calculation and recall, average intellectual functioning, her thought processes were coherent, logical, and goal-directed with no looseness of association or flight of ideas, no repetitious activity or speech impairment, and no delusions, sustained preoccupation, or suicidal/homicidal thoughts. Her insight was limited. Dr. Mellon diagnosed claimant with major depression, moderate, gave her a Global Assessment of Functioning score of 48, and opined that her prognosis was guarded without treatment. *Id.* at 193.

In October 1996, claimant told Dr. Merchant that she had registered for indigent care at UNMH, and that she would seek physical therapy and depression

medication there. *Id.* at 211. Claimant did not follow through on these statements. In December 1996, claimant saw Dr. Merchant for a breast problem, and in February 1997, she saw him for bronchitis.

In March 1997, claimant was examined at the UNMH Orthopedics Department. She described her condition as gradually improving, and noted that she had right leg symptoms approximately three times per year. Claimant was using over-the-counter medication for pain. Physical examinations of her back and knee were essentially normal, with a stable right knee, no swelling, normal reflexes in all extremities, no loss of sensation, no loss of strength except a mild loss in hip extension and flexion, negative straight leg raising, and a range of motion to eighty degrees without pain. There was no evidence of cervical, thoracic, or lumbar fracture on claimant's 1995 x-rays, and a 1997 x-ray of her knee was normal. *Id.* at 224-25.

In April 1997, claimant was seen at the UNMH with complaints of back pain after tripping and falling. Examination revealed tenderness along the spine, with pain on twisting and flexion. Leg and arm strength were 5/5. Although claimant was referred to physical therapy, she again did not follow through.

In July 1997, Dr. Merchant completed a form diagnosing claimant with "severe pain [due to] multiple disc herniations and soft tissue injury," based on her x-rays, CT scan, MRI and exam. *Id.* at 212. He indicated that he has referred

claimant to the UNMH for pain management and psychiatric care. The physician opined that claimant was totally disabled since May 5, 1995, and that she would remain so for years. *Id.* at 213-14. Dr. Merchant limited claimant to one hour of sitting, one hour of standing, and two hours of walking during an eight-hour day, opining that claimant could never lift more than five pounds and that she could not use her right arm or feet for pushing and pulling controls. *Id.* at 215.

In October 1998, Dr. Merchant again concluded claimant was totally disabled, and opined that she met the clinical listings for a spine disorder. *See id.* at 239-40 (Dr. Merchant's opinion and the requirements of 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.05 (1998), which are now codified in § 1.04). He opined that claimant met the criteria for osteoporosis under § 1.05(B)(2) and for a vertebrogenic disorder under § 1.05(C).

After her applications were denied at the first and second administrative levels, claimant participated in a hearing before an administrative law judge (ALJ). Claimant was represented by counsel. The ALJ issued his decision in February 1999, finding that claimant was not disabled. He found that claimant suffered from back pain and depression, but that her conditions did not meet or equal any of the listed impairments. Although the ALJ noted that claimant had been noncompliant with all recommendations for treatment of her depression, he found that she remained capable of performing simple, low-stress work, even

without treatment. The ALJ rejected Dr. Merchant's disability opinion as contrary to the evidence, and concluded that claimant retained the physical capacity to perform a significant number of jobs, including the manicurist aspect of her prior cosmetology jobs, and thus she was not disabled. The Appeals Council denied review, making the ALJ's determination as the final decision of the Commissioner. The district court affirmed.

We review the Commissioner's decision to determine only whether it is supported by substantial evidence and whether legal errors occurred. *See Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial "evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). We may not reweigh the evidence or substitute our judgment for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

Claimant argues that the ALJ committed legal error by disregarding her treating physician's opinion (1) that claimant met the listing for a spine disorder, and (2) that she was totally disabled from her injuries. A treating source's opinion is to be given controlling weight if it is "well supported by medically acceptable clinical . . . diagnostic techniques and is not inconsistent with the other

substantial evidence." 20 C.F.R. § 404.1527(d)(2). We agree with the ALJ that Dr. Merchant's opinion was contrary to the medical evidence.

As noted by the ALJ, Dr. Merchant concluded claimant was totally disabled based on "multiple disc herniations," despite the absence of any medical evidence to support this conclusion. Aplt's App., Vol. II at 22. None of claimant's x-rays, CT scans, or MRI findings demonstrated multiple herniations, and claimant's other treating sources found that she did not have such a condition. *See id.* at 148 (reporting that MRI views "reveal no significant lesions compressing neural structures"); 159 ("I do not see any evidence of a bulging or herniated cervical or lumbar disc, nor do I see evidence of a cervical [or] lumbar radiculitis or radiculopathy."). Further, the medical evidence did not show any "significant motor loss with muscle weakness and reflex loss," as required under the listing for vertebrogenic disorders. *See* § 1.05(C)(2). The pages cited by claimant do not contain such evidence. *See* Aplt's Br. at 12; Aplt's App., Vol. II at 138, 141, 159. The record also contradicted Dr. Merchant's opinion that claimant met the criteria of listing § 1.05(B)(1), which required x-ray evidence of multiple fractured vertebrae with no intervening trauma. *See id.* at 138-39, 225 (x-rays showed no fractures of cervical, thoracic, or lumbar vertebrae).

Where, as here, the ALJ decides that a treating source's opinion is not entitled to controlling weight, he must determine the weight it should be given

after considering the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the treating source's opinion is supported by objective evidence; (4) whether the opinion is consistent with the record as a whole; (5) whether or not the treating source is a specialist in the area upon which an opinion is given; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ concluded Dr. Merchant's opinion was not entitled to weight because he had only seen claimant twice for her back condition; his last examination of claimant was more than a year before he completed the RFC forms; his opinion was contrary to the evidence; he provided little treatment or evaluation of claimant's back condition; and he was a family practitioner with no specialty in orthopedics. As these were legitimate reasons for rejecting Dr. Merchant's opinion, the ALJ did not err in doing so.

Claimant argues that the ALJ erred in assessing her credibility. Because credibility findings are peculiarly within the province of the ALJ, we will not disturb such findings if they are supported by substantial evidence. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The ALJ identified numerous reasons for rejecting claimant's testimony regarding her limitations, including her lack of

medical treatment or use of prescription medication; her claim that she could not afford treatment despite her access to medical care through the UNMH indigency program; her failure to follow through with referrals for medical and mental health care; her daily activities; her unsupported claim that she had cervical cancer; her 1995 reports to physicians that her condition had improved considerably; and medical evidence that her conditions had resolved with conservative care. As the ALJ identified specific and legitimate reasons for doubting claimant's credibility, we defer to his findings. *See id.*

Claimant argues that the ALJ applied an incorrect legal standard in assessing her compliance with recommended care. We need not address this issue because the ALJ specifically stated that he did not rely on claimant's lack of compliance as a reason to deny benefits. *See* Aplt's App., Vol. II at 24.

Finally, claimant argues that the ALJ's conclusions that she could perform her former work as a manicurist and could perform a significant number of other jobs in the economy were not supported by substantial evidence. Claimant argues that the demands of such jobs are inconsistent with the limitations identified by Dr. Merchant. As we have already held that the ALJ did not err in rejecting Dr. Merchant's opinion, the ALJ was not bound by the restrictions identified by the physician. *See Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). The

-11-

ALJ's conclusions were supported by the vocational expert's hearing testimony, and therefore the ALJ did not err in finding that claimant was not disabled.

The district court's judgment is AFFIRMED.

Entered for the Court

John C. Porfilio
Circuit Judge