**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 12, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DIXIE D. MAXWELL,

        Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

        Defendant-Appellee.

No. 07-7091
(D.C. No. 6:06-CV-00352-KEW)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **McKAY**, and **GORSUCH**, Circuit Judges.

Plaintiff Dixie D. Maxwell had been a teacher for over twenty years when

she retired in January 2005, a few years after being diagnosed with deep vein

thrombosis ("DVT"). She applied for Social Security Disability benefits on

January 19, 2005, claiming that the condition rendered her completely disabled.

The Social Security Administration denied her application both initially and on

---

[*]      After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

reconsideration, but granted Ms. Maxwell's request for a hearing before an administrative law judge ("ALJ"), which took place on January 26, 2006. The ALJ concluded that Ms. Maxwell was not disabled within the meaning of the Social Security Act, because despite having DVT, which he concluded was a severe impairment, she retained the residual functional capacity ("RFC") to perform the full range of sedentary work.

The ALJ's opinion is replete with references to Ms. Maxwell's medical records, including the examination notes of Dr. Nabil Akkad, one of her treating physicians. It does not, however, specifically mention a reference in one of Dr. Akkad's treatment notes, stating that Ms. Maxwell should avoid standing or sitting for long hours. Ms. Maxwell contends this reference was an expression of Dr. Akkad's opinion that her functional limitations preclude her from performing the full range of sedentary work. And she argues that the ALJ committed reversible legal error by ignoring Dr. Akkad's opinion in formulating his RFC.

We have jurisdiction over this appeal under 42 U.S.C. § 405(g). Because we disagree with Ms. Maxwell's premise that the ALJ rejected Dr. Akkad's opinion, and because we further conclude that substantial evidence supports his decision, we AFFIRM.

I. Medical Evidence

DVT is a condition characterized by one or more blood clots embedded in one of the major deep veins of the lower legs, thighs, or pelvis. The condition

-2-

typically causes pain and swelling in the affected leg.  Ms. Maxwell was diagnosed with DVT in late December 2002, when she had to be hospitalized for several days because of severe swelling of her left leg.  The attending physician, Dr. Munir Zufari, noted left side swelling extending from Ms. Maxwell's ankle to her groin and diagnosed "massive deep venous thrombosis of the left lower extremity."  Aplt. App. at 194.  She was treated with t-PA, a drug that dissolves blood clots, and Coumadin, an anticoagulant.  Upon her discharge, she was instructed to continue taking the Coumadin and to wear elastic support stockings. After a short recovery period, Ms. Maxwell returned to work.  At her follow-up visit with Dr. Zufari in April 2003, however, he again noted "[m]assive swelling left lower extremity due to venous insufficiency following deep venous thrombosis." *Id.* at 192.  At that time, he performed a venogram and placed three stents in her left iliac veins.

On February 13, 2004, Ms. Maxwell was seen by Dr. Thomas H. Conklin, her primary care physician.  His notes indicate that she was still taking Coumadin and was having "[n]o problems." *Id.* at 233.  Two months later, however, on April 7, 2004, she was seen by Dr. Robert C. Jaggers, who performed a lower extremity venous duplex scan.  Dr. Jaggers's notes indicate "[c]hronic deep vein thrombosis . . . in the left leg with no flow noted in the superficial femoral vein, however, collateral flow has been established via the greater saphenous vein system." *Id.* at 205.  Prior to quitting her job, Ms. Maxwell was last examined by

a physician on October 22, 2004, when she visited Dr. Akkad. His notes indicate that she was "doing well" although she was "complain[ing] of some swelling in her left lower extremity, especially at the end of the day." *Id.* at 204. Dr. Akkad observed that her left leg was slightly larger than her right, but he noted that there was no pitting edema, venous ulcers, or skin discoloration. He advised Ms. Maxwell to continue her current treatment with Coumadin and support stockings and to follow up in another six months. It was at this follow-up examination, on April 22, 2005, that he made the following "Progress Note," which is at issue in this appeal:

> The patient denies any new symptoms. She denies any pain in her left leg. She still has mild swelling in the left leg compared to the right. Definitely, there is no pitting edema. She continues to wear compressive stockings. I told Ms. Maxwell there is nothing at this point I can offer her other than continued anticoagulation and keep from standing long hours on her feet or sitting for long hours. She will return for follow-up as needed.

*Id.* at 230.

This reference to standing and sitting for long hours is the most precise opinion that we have from a treating source concerning the functional limitations imposed by Ms. Maxwell's impairment. Based on her medical records, however, including this April 22, 2005, note from Dr. Akkad, an agency consulting physician concluded that Ms. Maxwell could stand or walk (with normal breaks) for a total of two hours in an eight-hour workday and could sit for about six hours. *See id.* at 235. The consulting physician noted on the RFC form that there

were no "treating or examining source statement(s) regarding the claimant's physical capacities" in the file. *Id.* at 240. Another consulting physician later concurred with this opinion, and the ALJ adopted it fully in assessing Ms. Maxwell's RFC.

## II. Discussion

On appeal, Ms. Maxwell argues that the ALJ erred by failing to give controlling weight to the opinion of her treating physician, Dr. Akkad, that she should not sit for prolonged periods. She claims that the ALJ's failure to even mention Dr. Akkad's opinion was tantamount to a complete rejection and that the ALJ committed additional error by failing to explain what weight, if any, he assigned to the opinion.

"Our review is to determine whether the Commissioner applied the correct legal standards and whether his decision is supported by substantial evidence." *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007). We consider substantial evidence to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted). We have also held that "[t]he agency's failure to apply correct legal standards, or show us it has done so, is . . . grounds for reversal." *Id.* Finally, it is not this court's job to reweigh the evidence or substitute our discretion for that of the Commissioner. Our task is simply to

review the Commissioner's legal analysis and examine the record to ensure that the evidence supporting the agency's decision is substantial.  *See id.*

## A.  Treating Physician's Opinion

The crux of this appeal is whether the ALJ's RFC assessment conflicts with Dr. Akkad's opinion at all.  And if so, whether the ALJ gave sufficient reasons for rejecting the opinion of a treating physician.  *See Hamlin*, 365 F.3d at 1215 (explaining that an ALJ must give specific reasons for rejecting treating physician's opinion); *see also* 20 C.F.R. § 404.1527(d)(2)-(6) (setting forth factors to be considered in determining what weight to give medical opinions).  We do not reach the second part of the analysis, however, because we agree with the district court that the ALJ's RFC assessment does not necessarily conflict with Dr. Akkad's opinion that Ms. Maxwell should "keep from standing long hours on her feet or sitting for long hours."  Aplt. App. at 230.

The ALJ concluded that Ms. Maxwell retained the RFC to "walk (with normal breaks) two hours of an eight-hour workday, and sit (with normal breaks) six hours of an eight-hour workday.  In other words, claimant can perform a full range of sedentary work."  *Id.* at 65.  (quotation omitted).  Ms. Maxwell argues this RFC is not compatible with her functional limitations, as attested to by Dr. Akkad, because the swelling in her left leg would prevent her from sitting for six hours.  As the Commissioner has explained, however, the full range of sedentary work does not require six hours of uninterrupted sitting.  Rather, it

-6-

contemplates morning, lunch, and afternoon breaks at approximately two-hour

intervals. *See* Social Security Ruling (SSR) 96-9p, 1996 WL 374185, at *6.

Sedentary work also contemplates walking up to two hours total in an eight-hour

workday. *Id.* at *3. We agree with the Commissioner's sensible argument that

such walking is most likely interspersed throughout the day so that an individual

is not likely to sit for prolonged periods. There is nothing in Dr. Akkad's

treatment notes to indicate that, in his view, Ms. Maxwell could not meet these

requirements.

Ms. Maxwell rightly points out that the ALJ did not explicitly discuss what

weight, if any, he assigned to Dr. Akkad's opinion. While this certainly would

have been preferable, the ALJ's failure does not require reversal in this case. We

have held that "[w]hen the ALJ does not need to reject or weigh evidence

unfavorably in order to determine a claimant's RFC, the need for express analysis

is weakened." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). We

have already held that the ALJ did not reject Dr. Akkad's opinion. Nor did he

treat any medical evidence unfavorably in concluding that Ms. Maxwell was not

entitled to benefits. Accordingly, his analysis, though far from exhaustive,

suffices in this case.

## B. Substantial Evidence

Finally, we conclude that the ALJ's RFC assessment was supported by

substantial evidence. Ms. Maxwell's activities of daily living, both as described

in her disability application forms and according to her hearing testimony, support the ALJ's conclusion that she can perform sedentary work. She repeatedly testified that she can take care of herself and perform regular household chores (cooking, cleaning, laundry, etc.) so long as she takes regular breaks. She is able to sit while reading and partaking of other hobbies, including sewing and scrap-booking and she drives regularly. Ms. Maxwell also continued to teach for two years after being diagnosed with DVT with no apparent worsening of the condition. Moreover, the medical evidence demonstrates that she has responded well to treatment with Coumadin and support stockings, and not a single doctor has opined that Ms. Maxwell cannot work. To the contrary, she was released to work a mere week after being hospitalized for acute DVT in January 2003. We believe this is "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion." *Hamlin*, 365 F.3d at 1214.

The only contrary evidence is Ms. Maxwell's own testimony concerning her constant need to elevate her left leg above hip level, which, the vocational expert testified, would essentially eliminate all sedentary jobs. But the ALJ did not believe this testimony:

> Having canvassed the claimant's hearing testimony, along with other record evidence, the [ALJ] finds that the claimant's allegations of adverse symptomatology are just not believable to the extent alleged.

> The claimant's statements concerning her impairments and their impact on her ability to work during the period of time under consideration are not entirely credible in light [of] the nature of medical treatment required, the medical history, the conservative treatment by her physicians, the findings made on examination, and, most importantly, the marked discrepancies between her allegations and the information contained in the documentary reports.

Aplt. App. at 68. We have long held that "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). By the same token, "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (quotation and alteration omitted). In this case, the ALJ sufficiently explained the link between the objective evidence and his determination that Ms. Maxwell's testimony was not entirely credible. *Cf. id.* (remanding because "the link between the evidence and credibility determination [was] missing"). He explained that the medical evidence, Ms. Maxwell's work history, and her own description of her current lifestyle, when considered as a whole, was simply incompatible with her claim that she cannot perform the physical requirements of sedentary work. Having carefully reviewed the record, we see no basis to reject his adverse credibility determination.

## III. Conclusion

For the reasons set forth above, we conclude that the Commissioner applied the correct legal standards in concluding that Ms. Maxwell is not disabled and that substantial evidence supports that decision.  We therefore AFFIRM the judgment of the district court.

Entered for the Court


Monroe G. McKay
Circuit Judge