F I L E D
United States Court of Appeals
Tenth Circuit

FEB 5 2004

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

BETTY J. JOYCE,

Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

Defendant-Appellee.

No. 03-6107
(D.C. No. CIV-01-1799-A)
(W.D. Okla.)

ORDER AND JUDGMENT  *

Before **McCONNELL** , **ANDERSON** , and **BALDOCK** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore

ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant Betty J. Joyce appeals from an order of the district court affirming the Commissioner's decision to deny her application for Social Security disability and Supplemental Security Income benefits (SSI). Joyce alleges that she is disabled from carpal tunnel syndrome and hypertension. The symptoms of Joyce's hypertension are controlled by medication, and the two treating physicians in her case came to opposite conclusions regarding the severity of her carpal tunnel syndrome. The ALJ's decision explained why he found the conclusion of Joyce's orthopedic hand specialist to be more credible in evaluating the severity of the carpal tunnel syndrome than the conclusion of her family practitioner.

On appeal, Joyce challenges the decision of the Commissioner alleging (1) that the ALJ did not give enough weight to the opinion of her family practitioner as a treating physician, (2) that the ALJ failed properly to credit Joyce's testimony about the severity of her limitations, and (3) that she should have qualified as automatically disabled under the listing of impairments in the Social Security regulations. We have jurisdiction over this appeal under 42 U.S.C. § 405(g), and we affirm.

## BACKGROUND

When the Commissioner examined Joyce's claim for benefits, she was a 46-year-old woman with a General Equivalency Diploma and past relevant experience as a laborer, caretaker, nursing assistant, cook, and waitress. ALJ

Decision, Aplt. App. Vol. II at 17. These positions are skilled, semi-skilled, and unskilled jobs at the light and medium exertional levels. *Id.* at 17-18 (citing the testimony of Dr. Young, a qualified vocational expert).

In 1998, Joyce had been diagnosed with carpal tunnel syndrome, which was fully present in her right wrist and "very mild" in her left wrist. Surgeon's Notes, Ex. 5F, *id.* at 148. She elected to undergo surgery on her right wrist in September of that year. *Id.* at 146.

On November 2, Dr. Michael B. Clendenin, Joyce's surgeon and a specialist in surgery of the hand and upper extremities, released her to return to her work at a nursing home. *Id.* at 150. In his opinion, as of that date, Joyce was "unrestricted with respect to the activities that she performs with her hands." *Id.* Even after she was released, however, Joyce did not return to work. *Id.* at 151.

On January 19, Joyce saw Dr. Clendenin for another office visit. *Id.* Dr. Clendenin spent a long time with Joyce discussing her symptoms, he conducted tests, and he ultimately concluded that Joyce was more bothered by symptoms of swelling and discomfort than by actual parasthesias. *Id.* He refused to recommend surgery on Joyce's left hand. *Id.* Dr. Clendenin instead felt Joyce had "reached maximal medical benefit" from the procedures that could be done. *Id.* Joyce had a fourteen percent partial impairment of her right hand, and a ten percent partial impairment of her left hand. *Id.* The additional impairment in

Joyce's right hand was due to "anatomic changes" in her hand after surgery. *Id.* Dr. Clendenin thus concluded that Joyce could "perform light to moderate activities with her hand," though "[t]hese should not be assembly line or extremely repetitive in nature." *Id.* He released her from "active medical care as of today." *Id.*

Joyce was examined briefly by other physicians for a worker's compensation claim and for this disability determination. The doctor for the worker's compensation claim examined her before the surgery and pronounced her to be temporarily disabled as a result of cumulative repetitive trauma from work. Ex. 7F, *id.* at 159, 160. But Dr. Sri K. Reddy, the doctor who performed the disability determination, examined Joyce after the surgery. Ex. 8F, *id.* at 162. On May 19, 1999, Dr. Reddy found that Joyce's grip/grasp strength was normal in the left hand. Ex. 8F, *id.* at 168. Although Joyce's right hand was weaker than her left, her hand/wrist range of motion was normal in her right, and she was able to manipulate small objects with her hands and fingers. *Id.*

Joyce's hypertension is less well documented than her carpal tunnel syndrome, but she did mention it to Dr. Reddy. Dr. Reddy noted that Joyce was obese, that she smoked thirty cigarettes per day, and that she took Inderal daily and Lortab as needed for her symptoms. *Id.* at 162. At the time, however, Joyce denied any "chest pain, lightheadedness, palpitations or dizziness." *Id.*

Then, on March 15, 2000, the day before Joyce was to give testimony at her hearing before the ALJ, Joyce's family physician filled out a one-page response form on her attorney's letterhead opining that Joyce could not "do *any* work with her hands." Ex. 17F, *id.* at 185 (emphasis in original). Dr. W. Edward Clymer wrote that Joyce's carpal tunnel syndrome was "*severe*," and that she would miss "*at least* 90 % of workdays in any month." *Id.* (emphases in original). According to Dr. Clymer, Joyce's grip strength in each hand was "less than 30%." *Id.* Dr. Clymer made no reference to Joyce's hypertension.

On March 16, 2000, Joyce testified at the hearing before the ALJ that she was in pain from the carpal tunnel syndrome and felt discomfort from the hypertension. Joyce Test., *id.* at 45-50. The carpal tunnel syndrome gave her shooting pain up her arm to her shoulder blade. *Id.* at 45. Joyce's hypertension made her feel "light-headed," she saw "spots" in front of her, and it sometime made her feel "nauseated at my stomach." *Id.* at 48. She woke up often in the middle of the night and had to rest after activities during the day. *Id.* at 46-47. But Joyce admitted that she was able to take care of herself. *Id.* at 45-50. She, for example, performed chores such as washing dishes, vacuuming, and making her bed. *Id.* at 46. She was able to drive, to work in the yard, and to do her own light shopping. *Id.* at 36, 54-56. Joyce spent most of her time watching

television (six hours per day); she read to her grandchildren, she visited her mother, she went to Wal-Mart, and she took naps. *Id.* at 54-58.

The ALJ questioned Joyce about her pain management techniques. Joyce had won a settlement award in her worker's compensation case, but she said that she took Ibuprofen instead of her prescribed medications because she could not afford the cost of the prescription medication. *Id.* at 43, 62. In response to questions about her expenses, Joyce testified that she was on food stamps, but she paid no rent and smoked one to two packages of cigarettes per day. *Id.* at 43, 44.

In his decision dated June 29, 2000, the ALJ determined that Joyce was not disabled. At step one, the ALJ found that Joyce was impaired by carpal tunnel syndrome and hypertension, but that her impairments were not severe enough to reduce her ability to work. ALJ Decision, *id.* at 23. At step two, he found that Joyce's impairments were not severe enough to meet or equal any of the listed impairments in the Social Security Regulations that would require a finding that she was automatically disabled. *Id.* At step three, the ALJ determined that Joyce retained the residual functional capacity to perform a wide range of light work. *Id.* She could lift and carry up to ten pounds frequently, and up to twenty pounds occasionally. *Id.* at 21. She could sit, stand, or walk for up to six hours in an eight-hour day, with normal breaks. *Id.* And she could perform tasks where there was no requirement for constant repetitive work with her hands. *Id.* At step four,

the ALJ held that Joyce could return to her past relevant work as a home companion. *Id.* at 23. In the alternative, at step five, if Joyce could not return to her previous relevant work, the ALJ would still refuse to find Joyce to be disabled because she could perform a variety of other light or sedentary unskilled jobs. [1] *Id.* at 22. On September 20, 2001, the Appeals Council denied Joyce's request for review, and the ALJ's decision became the final decision of the Commissioner.

## STANDARD OF REVIEW

We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989) (quotations omitted). We consider whether the ALJ followed the "specific rules of law that must be followed in weighing particular types of evidence," *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988), but we will not reweigh the evidence or substitute

---

[1] The list of these jobs included: cashier (sedentary, unskilled), of which there are approximately 3,000 jobs statewide and 450,000 jobs nationally; cashier (light, unskilled), of which there are approximately 10,000 jobs statewide and 1,400,000 jobs nationally; phone solicitor (sedentary, unskilled), of which there are approximately 3,500 jobs statewide and 600,000 nationally; and kitchen helper (no classification given), of which there are approximately 5,000 jobs statewide and 650,000 jobs nationally. ALJ Decision, Aplt. App. Vol. II at 22.

our judgment for the Commissioner's, *see Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. *See id.* at 751 & n.2. If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC to perform work in the national economy, given his age, education, and work experience. *See id.*

## DISCUSSION

Joyce argues on appeal (1) that the ALJ did not give appropriate weight to the opinion of her family practitioner as a treating physician, (2) that the ALJ failed properly to credit Joyce's testimony about her limitations, and (3) that she should have qualified as automatically disabled under the listing of impairments in the Social Security regulations. We address each of Joyce's objections in turn.

*1.     The Weight Given to the Opinion of Joyce's Family Practitioner*

First, we hold that the ALJ's decision to credit the conclusion of Joyce's orthopedic hand specialist over the opinion of her family practitioner regarding

the status of her carpal tunnel syndrome was supported by substantial evidence.

The ALJ's opinion explained that Dr. Clymer had failed to substantiate his

"conclusory remarks with any clinical or laboratory data," although the ALJ had

left the record open after the hearing for Joyce to submit any further corroborative

records. [2] ALJ Decision, Aplt. App. Vol. II at 21. The ALJ also found

Dr. Clymer's assertions not "fully consistent with the claimant's record as a

whole." *Id.*

In social security disability cases, a treating physician may proffer an

opinion about a claimant's impairments and the Commissioner will accord

"controlling weight to that type of opinion if it is well supported by clinical and

laboratory diagnostic techniques and if it is not inconsistent with other substantial

evidence in the record." *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d

1027, 1029 (10th Cir. 1994). A treating physician may opine that a claimant is

totally disabled, but "[t]hat opinion is not dispositive because final responsibility

---

[2] Joyce argues in her brief that the ALJ failed to report the statistics that Dr. Clymer used in his one-page report, such as his assertion that she would need to miss ninety percent of the days in a month from work. Aplt. Br. at 16-17. But the ALJ does both accurately describe the contents of Dr. Clymer's report and explain why he found the statistics therein unpersuasive, and this is all that he is required to do. *See generally Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000). The ALJ's point that Dr. Clymer cited no clinical or laboratory data for his conclusions was also correct.

for determining the ultimate issue of disability is reserved to the [Commissioner]." *Id.*

In 1991, the Secretary of Health and Human Services promulgated regulations that codified existing Tenth Circuit law. *See id.* at 1029. According to what has come to be known as the treating physician rule, the agency will generally give more weight to medical opinions from treating sources than those from non-treating sources, but the agency will not give controlling weight to the medical opinion of a treating source unless the source's conclusion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2).

The ALJ explained why he found Dr. Clymer's opinion to be neither supported by clinical and laboratory diagnostic techniques nor consistent with the other evidence in Joyce's case. We agree that his decision to give Dr. Clymer's opinion little weight is supported by substantial evidence. Dr. Clymer faxed his one-page report form to the agency on Joyce's attorney's stationery in a rush a single day before the hearing. He made sweeping claims that Joyce was completely unable to work with her hands, and he included statistics about her grip strength and the number of days that she would need to miss work in a month that appear unmoored and arbitrary. He failed to supplement that single-page

form with clinical or laboratory data, even though the ALJ left the record open for him to do so.

Dr. Clymer's conclusions were also contrary to the results of the two other physicians who examined Joyce after her surgery. *See, e.g.*, *Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir. 1987) ("[T]he treating physician rule governs the weight to be accorded the medical opinion of the physician who treated the claimant . . . relative to other medical evidence before the fact-finder, including opinions of other physicians.") (quotation omitted); *accord Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995). Joyce's other treating physician, Dr. Clendenin, spent a significant amount of time discussing Joyce's symptoms with her, he performed tests on her hands, and then he made the considered decision to release her from medical care. Dr. Clendenin's conclusion that Joyce's impairment from carpal tunnel syndrome was within tolerable limits is entitled to particular weight because he is a specialist. *See* 20 C.F.R. § 404.1527(d)(5). And Dr. Clendenin's conclusions were bolstered by the result of Dr. Reddy's examination four months later. Dr. Reddy found significant improvement in Joyce's condition: the grasp strength in her left hand was normal, and, although Joyce's right hand was weaker than her left, the range of motion in that hand was also normal. Dr. Reddy noted that Joyce could manipulate small objects with her hands and fingers. These are highly specific results that chart Joyce's progress.

Because Dr. Clymer's conclusions were poorly supported by clinical or laboratory data and his results were contrary to the remaining medical evidence in Joyce's case, we hold that the ALJ's decision to give Dr. Clymer's opinion little weight was supported by substantial evidence.

*2.      The ALJ's Credibility Determination Regarding Joyce's Testimony*

Second, we hold that the ALJ properly chose not to find Joyce's testimony about her limitations credible. Joyce had asserted that the pain in her hands from carpal tunnel syndrome was debilitating, and that she saw spots and was lightheaded from hypertension. But the ALJ found Joyce's allegations "not fully credible." ALJ Decision, Aplt. App. Vol. II at 20. He explained that his conclusion was based on, but not limited to, "the objective findings, or the lack thereof, by treating and examining physicians, the lack of medication for severe pain, and the frequency of treatments by physicians and the lack of discomfort shown by the claimant at the hearing." *Id.* at 20. Joyce's hypertension was "fairly well controlled with medication," *id.* at 19, and the ALJ recited the list of activities Joyce was able to perform such as washing dishes, driving, and shopping, despite her carpal tunnel syndrome. *Id.* at 20. The ALJ did also credit Joyce's testimony about her limitations insofar as he listed types of work that

-12-

would not require constant repetitive motion with her hands, a condition that comported with her surgeon's recommendation. *Id.* at 21.

Under 20 C.F.R. § 404.1529, an ALJ considers "all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." In evaluating an ALJ's credibility determination when a claimant alleges disabling pain, we employ a three-part framework that considers "(1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994) (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). It is difficult, however, for a claimant "to establish disabling pain without the explicit confirmation of treating physicians." *Kepler v. Chater*, 68 F.3d 387, 390 (10th Cir. 1995) (quoting *Huston v. Bowen*, 838 F.2d 1125, 1131 (10th Cir. 1988)).

Additionally, "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler*, 68 F.3d at 391 (quotation omitted). *Kepler* "does

not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (quoting *Qualls*, 206 F.3d 1368 at 1372).

In this case, the ALJ explained his reasons for discounting Joyce's testimony that her pain was disabling, and we agree that substantial evidence supports the ALJ's decision to find that Joyce's testimony was less than fully credible. The major factor is that Joyce's testimony about her limitations was not supported by the evidence in her medical records. Her medical records do document that she experienced pain from her carpal tunnel syndrome, but she did not experience parasthesias. She is also responsible for taking pain medication of the type and quantity prescribed to control her symptoms. *See, e.g.*, 20 C.F.R. §§ 404.1530(a)-(b). As of Joyce's visit to Dr. Reddy on May 19, 1999, taking her medication for hypertension eliminated her symptoms for that ailment completely. Joyce claims that she could not afford the pain medication for her carpal tunnel syndrome, but she could spend enough money to smoke one to two packages of cigarettes per day. [3]

---

[3] Because, according to her medical reports and the ALJ's findings, Joyce is able to work even without pain medication, it is not further relevant to our analysis how much the pain medication would cost and what the details of her finances are. *Cf., e.g.*, *Thompson v. Sullivan*, 987 F.2d 1482, 1489-90 (10th Cir.

(continued...)

-14-

Moreover, the timeline of entries in Joyce's medical records shows steady improvement in her condition. Joyce's surgeon released her to go back to work as early as November 2, 1998, less than a month after surgery, but she refused. When Dr. Clendenin saw Joyce again on January 19, she did complain of swelling and discomfort, but she was not disabled by parasthesias. By the time Dr. Reddy saw Joyce, seven months after the surgery, she had a high level of functionality in both of her hands.

In light of the contents of Joyce's medical records, we hold that the ALJ's conclusion that Joyce was capable of a higher level of functionality than she claimed was well supported by substantial evidence.

3. *The ALJ's Finding that Joyce Did Not Qualify as Automatically Disabled under the Listing of Impairments in the Social Security Regulations*

Third, we hold that substantial evidence supported the ALJ's decision to find that Joyce was not automatically disabled under the listing of impairments in

[3](...continued)
1993). We additionally note, that, because neither the information about the cost of prescription drugs for her carpal tunnel syndrome nor the information about Joyce's precise financial condition was presented at her hearing, the record would be inadequate for us to consider the question on appeal. *See generally Scott v. Hern*, 216 F.3d 897, 912 (10th Cir. 2000) (establishing that, where the evidentiary record is insufficient to permit an assessment of the appellant's claims of error, we must affirm).

the social security regulations. Joyce's objection here is presented in cursory form and without much precision.

The ALJ wrote that "[t]he objective medical evidence demonstrates that claimant's medically determinable impairments do not meet the criteria specified in Section 1.02 through 1.13 of the Listing of Impairments." ALJ Decision, Aplt. App. Vol. II at 21. As he explained, "[s]pecifically, the claimant's impairment of carpal tunnel [syndrome] does not meet the criteria specified for Section 1.13 (pertaining to soft tissue injuries of the upper or lower extremities)." *Id.*

In 2000, Section 1.13 of the Listing of Impairments stated that, in order to have been considered automatically disabled, a claimant must have had "[s]oft tissue injuries of an upper or lower extremity requiring a series of staged surgical procedures within 12 months after onset for salvage and/or restoration of major function of the extremity, and such major function was not restored or expected to be restored within 12 months after onset." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.13 (2000).

Joyce does not contend that she met the requirements of Section 1.13, nor at any point did Joyce otherwise assert that she had been the recipient of a "series of staged surgeries," as opposed to a single surgery, or that some "major function was not restored or expected to be restored within 12 months after onset" of her carpal tunnel syndrome.

-16-

Instead, Joyce appear to argue that she met a different standard in the listing that a claimant must have, for example, significant and persistent disorganization of motor function in two extremities, resulting in sustained dysfunction of gross and dexterous movements. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.00(C). But, even here, Joyce does not attempt to explain how the facts of her case would have qualified her under that standard. She does not review the medical evidence that showed that she had high levels of function in both of her hands. She simply asserts to the contrary that she has "persistent and significant neurological insult from her CTS [carpal tunnel syndrome] that interferes with hand function." Aplt. Br. at 49. The ALJ's decision made no such finding.

Joyce retains the burden of proof at this stage of the five-step analysis, *see Williams*, 844 F.2d at 751 & n.2. She has not shouldered that burden, and we will not reverse the Commissioner's decision on this basis.

## CONCLUSION

For the reasons stated above, we hold that the Commissioner's decision to deny Joyce benefits was supported by substantial evidence. The judgment of the district court is AFFIRMED.

Entered for the Court

Michael W. McConnell
Circuit Judge